**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**

CASE NO. 2:12-CV-595-FTM-995PC

TAYLOR, BEAN & WHITAKER MORTGAGE
CORP., et al.,

      Plaintiffs,

v.

LENNAR CORP., a Delaware Corporation, et al.,

      Defendants.
_____/

**BERGER SINGERMAN LLP'S RESPONSE IN OPPOSITION TO DEFENDANTS
LENNAR CORPORATION AND U.S. HOME CORPORATION'S MOTION
TO DISQUALIFY COUNSEL FOR PLAINTIFF**

Berger Singerman LLP ("Berger Singerman" or "the firm") hereby opposes Defendants

Lennar Corporation ("Lennar Corp.") and U.S. Home Corporation's ("U.S. Home") Motion to

Disqualify Counsel for Plaintiff, Taylor, Bean & Whitaker Mortgage Corp. ("TBW") (Doc. #

18) (the "Motion"). As set forth below, Lennar Corp. and U.S Home cannot meet their heavy

burden of showing that Berger Singerman should be disqualified.

## I.      INTRODUCTION

Lennar Corp. and U.S. Home[1] have failed to meet their heavy burden of showing that

the Court should resort to the drastic remedy of disqualifying the Plan Trustee of TBW's (the

"Plan Trustee") choice of counsel. Relying on Rule 4-1.7 of the Rules Regulating The Florida

Bar, and in what appears to be an attempt to obtain an unfair tactical advantage over TBW,

Lennar Corp. and U.S. Home seek to disqualify the Plan Trustee's counsel of choice, Berger

---

[1] U.S. Home presents no basis for disqualification, under any rule. Accordingly, this response addresses
Lennar Corp., but the arguments apply with equal or greater force to U.S. Home.

Singerman, on the basis that the firm currently represents Lennar Corp. by virtue of its representation of Lennar Corp.'s subsidiary in an unrelated case.

The Motion is without merit, and should be denied for several reasons. Contrary to Lennar Corp.'s assertion, Lennar Corp. is not a current client of Burger Singerman, but a former client. The firm's representation of Lennar Corp. concluded in October 2009, and its representation of Lennar Corp.'s subsidiary, Lennar Homes, LLC, in another case is insufficient to transform Lennar Corp. from a former client to a current one. Lennar Homes is a separate and distinct entity, the firm's motion to withdraw in that case was granted, and that case has been settled by the parties. Moreover, the prior representation of Lennar Corp. is wholly unrelated to this action – and certainly not "substantially related" as it would have to be to give rise to a conflict of interest based on its former client status.

Further, even if Lennar Corp were a current client — which it is not — Lennar Corp. repeatedly signed engagement letters with the firm which contained express waivers of the type of conflict Lennar Corp. claims exists here. As explained by the firm's expert, Lucian T. Pera,[2] those waivers were signed by a sophisticated, knowledgeable client with the advice of its own experienced in-house counsel. They are valid. *See* **Ex. 1** at ¶¶ 17-19 [Pera Decl.].

As set forth in detail below, Lennar Corp. cannot carry its heavy burden of proof of showing that any conflict of interest exists or that it is necessary to disqualify Berger Singerman as counsel for the Plan Trustee. Accordingly, the Motion should be denied.

---

[2] Mr. Pera has extensive experience teaching, writing, and counseling attorneys about legal ethics and has served on several ethics committees, including the American Bar Association Special Commission on the Evaluation of the Rules of Professional Conduct for five years. *See* **Ex. 1** at ¶¶ 5-8 [Pera Decl.].

## II.   **BACKGROUND**

**A.   The Firm's Representation of Lennar Corp.**

Lennar Corp., a Delaware corporation, initially retained the firm in September 2007. The firm represented Lennar Corp. on several matters through October 2009, by which time each of the matters had concluded.  *See* **Ex. 2** at ¶¶ 4, 7 [Berger Decl.].  After October 2009, Lennar Corp. did not request any further work from the firm.  As a result, the firm has not represented Lennar Corp. in any matter since October 2009.  *See id.*  None of the matters in which the firm represented Lennar Corp. related in any way to this Case.  *See id.* at ¶ 12.

Lennar Corp. signed five engagement letters with the firm, each of which was reviewed and signed by Lennar Corp.'s then Deputy General Counsel, L. Christian Marlin.[3]  Each letter provided that the firm "do[es] not and will not represent any person or entity other than the Client, regardless of any direct or indirect affiliation with the Client, unless we expressly agree to do so in writing."  **Ex. 3.** [Eng. Ltrs.].  The Client was identified as Lennar Corp.  *See id.*

Each letter also contained the following prospective conflicts waiver provision:

> You understand that, as is that case with any law firm, way may from time to time represent <u>in unrelated matters</u> a client whose interests may conflict with those of another client.  Thus, for example, there may be instances in which we may represent the Client [Lennar Corp.] in a litigation or other matter and, at the same time, we may represent another party in connection with an unrelated litigation or other matter adverse to the Client.  As part of our engagement, the Client consents to such representations so long as they do not involve a direct conflict in a specific matter in which we represent the Client.

*Id.* (emphasis in original).  Mr. Marlin discussed the advance conflict waiver provisions with the firm prior to signing the first engagement letter.  *See* **Ex. 2** at ¶ 5 [Berger Decl.].  Mr.

---

[3]  Mr. Marlin is currently Vice President and Special Counsel at Lennar Corp.  *See* Mot. at Ex. A, ¶ 2.  From October 2003 to May 2009, he held various positions with Lennar Corp., including Associate General Counsel, Deputy General Counsel, and Interim General Counsel.  *See id.* at ¶ 3.  He signed each of the engagement letters on behalf of Lennar Corp. as "Deputy General Counsel."  **Ex. 3** [Eng. Ltrs.].

Marlin signed the engagement letter without any further questions, comments or discussion about any of the terms.  *See id.*  With respect to each engagement letter, Lennar Corp. did not indicate in any respect that the terms set forth in the letters were in any way problematic or unacceptable.  *See id.*  Mr. Marlin is experienced in handling legal matters for Lennar Corp. and has "executed many engagement letters and had been responsible for retaining outside counsel on behalf of the Lennar Entities for hundreds of matters."  Mot. at Ex. A, ¶ 11.

**B.      The Firm's Representation of Lennar Homes in the JB Ranch Matter**

Lennar Homes is a Florida limited liability company and subsidiary of Lennar Corp. Lennar Homes retained Berger Singerman in 2009 to assist it in the defense of a foreclosure action.  *See* **Ex. 4** at ¶ 3 [Carriuolo Decl.].  Lennar Homes had invested in a development venture with JB Ranch Associates RLLP, the owner of lands in Ocala, Florida that were earmarked for a residential subdivision.  *See id.*  JB Ranch had granted Lennar Homes a mortgage on the property to secure repayment of Lennar Homes's investment.  *See id.*  Regions Bank held a first priority real estate mortgage.  In 2009, Regions Bank initiated a foreclosure action relating to the property (the "JB Ranch Matter"), and Lennar Homes hired the firm to represent it in that action.[4]  *See id.*  The JB Ranch Matter did not relate to TBW or to the matters in which the firm had represented Lennar Corp.  *See id.* at ¶ 4.

In mid-October 2010, Lennar Homes decided not to contest foreclosure in the JB Ranch Matter.  *See id.* at ¶ 6.  Accordingly, Lennar Homes's Regional Vice President, Jim Bavouset, instructed the firm not to take further action in the JB Ranch Matter.  *See id.* and Exs. A and C

---

[4] Lennar Corp. defines the JB Ranch Matter, the basis of the purported conflict, as *Regions Bank v. J.B. Ranch Assocs., RLLP*, No. 42-2009-CA-005830-A (3d Jud. Cir., Marion Cty., Fla.).  Mot. at 3 n.1.

thereto [10/17/10 and 11/10/10 emails][5].   Lennar Homes's decision to "stand down" was communicated to Regions Bank.   *See id.* and Ex. B thereto [10/17/10 email to Region's counsel].   As a result, from mid-October 2010 and the beginning of May 2012, the firm performed only ministerial work in connection with the JB Ranch Matter (monitoring activities of other parties, and providing status reports).   *See id.*   Between early May 2012 and early July 2012, the firm performed ***no work*** in the JB Ranch Matter.   *See id.*   The firm attorneys collectively expended a total of 11.10 hours on the JB Ranch Matter.   *See id.* at ¶ 5.

TBW filed the present lawsuit against Lennar Corp., U.S. Home, and other defendants in state court on August 15, 2008 ("this Case").   At the time that Berger Singerman filed a notice of appearance on behalf of the Plan Trustee in this Case on May 24, 2012, pursuant to Lennar Homes's express instructions, the firm was not actively performing any work in the JB Ranch Matter.   *See id.* and Ex. A thereto; **Ex. 5** [Stip.].   Indeed, when a court-ordered mediation was scheduled to occur in June 2012, Lennar Homes informed the firm that it wanted to be relieved of any obligation to attend.   **Ex. 4** at ¶ 6 [Carriuolo Decl.].   The firm obtained the parties' consent to relieve Lennar Homes of any obligation to attend, but ultimately the mediation was cancelled.   *See id.*   After almost two years of performing little to no work in the JB Ranch Matter, and a little over a month after the firm had filed its notice of appearance and had executed a stipulation with Lennar Corp.'s counsel in this Case, Mr. Bavouset asked the firm to assist Lennar Homes in amending certain Homeowners Association ("HOA") documents as part of an overall resolution of the JB Ranch Matter.   *See id.* at ¶ 7.   Lennar Homes did not ask the firm to assist with any other matters leading to the settlement of the JB

---

[5] Several exhibits to this Response or to the Declarations attached hereto may constitute attorney-client privileged and/or confidential communications.   Accordingly, in an abundance of caution, the firm has not filed those documents publicly, but is serving them by email solely upon counsel for Lennar Corp. and U.S. Home.   The firm also will file these exhibits separately, under seal, for the Court's reference.

Ranch Matter.  *See id.*  Robert Barron, a firm attorney, edited amendments to the HOA documents that had been drafted by others and provided them to Lennar Homes on July 25, 2012. *See id.*

On July 27, 2012, Berger Singerman advised Lennar Homes that it was terminating its representation of it in the JB Ranch Matter.  *See id.* at ¶ 8.  The firm also moved to withdraw from the representation.  The court granted the firm's motion to withdraw on November 8, 2012. *See id.* at Ex. D [Order].  The parties have recently reached a final settlement in the JB Ranch Matter.  *See* **Ex. 6** [Not. of Stip., excl. Ex. A].

## C.     The TBW Bankruptcy and Berger Singerman's Representation of TBW

TBW filed this Case on August 15, 2008, with Troutman Sanders LLP as its counsel. TBW has not sued Lennar Homes, and it is not mentioned in the Amended Complaint.

On August 24, 2009, TBW filed a voluntary petition under Chapter 11 of the Bankruptcy Code (the "TBW Bankruptcy").  *See* **Ex. 7**. [Dkts. excerpts].  The firm a appeared as counsel for the Official Committee of Unsecured Creditors of TBW (the "Committee") in the TBW Bankruptcy on September 21, 2009.  *See* **Ex. 8** [Notice].  Paul Singerman, a partner of the firm, is primarily responsible for that representation.  *See* **Ex. 2** at ¶ 14 [Berger Decl.].

In January 2010, Mr. Singerman argued on behalf of the Committee at an auction hearing in the TBW Bankruptcy.  *See id.* at ¶ 15.  Mr. Marlin was aware of the TBW Bankruptcy auction and that Berger Singerman was arguing on behalf of the Committee.  Mr. Marlin indicated to Mr. Berger in an email on January 22, 2010, that he was not attending the auction because he was not a qualified bidder, but that he "would love to be there."  *Id.* and Ex. A thereto [1/10 emails].  On January 27, 2010, Mr. Marlin emailed Mr. Berger congratulating him for "a great job with the auction."  *Id.* and Ex. A thereto.  Lennar Corp. asserted no

objection to the firm's representation of the Committee.  *See id.*

On July 21, 2011, the Bankruptcy Court approved the Third Amended Plan of Liquidation and appointed Neil Luria as the Plan Trustee.  *See* **Ex. 9** [7/21/11 Order excerpts]. The Plan set forth the rights and responsibilities of the Plan Trustee and provided that "the Plan Trust shall be vested with and may exclusively enforce and prosecute any Causes of Action that the Debtors [*e.g.*, TBW], the Estates, the Creditors' Committee or the Plan Trust may have against any Person.  The Plan Trustee may pursue such retained claims or Causes of Action in accordance with the best interests of the Plan Trust and its beneficiaries."  **Ex. 10** at 34 [Plan excerpts].  The Plan's definition of "Causes of Action" includes "an action that is or may be pending on the Effective Date [of the Plan] or instituted by the Plan Trustee after the Effective Date against any Person based on law or equity . . ."  *Id.* at Dfns. Annex, 6-7.  The Plan further provided that "the Plan Trustee may retain counsel in any matter related to administration of the Plan, including counsel that has acted counsel for the Debtors, the Creditors' Committee, or the members of the Creditors' Committee."  *Id.* at 34.  The firm was identified as the Committee's counsel.  *See* **Ex. 8** [Notice].  Starting August 2011, the firm represented the Plan Trustee in numerous filings in the TBW Bankruptcy.  *See*, *e.g.*, **Ex. 11** [8/18/11 Mot.].

On May 24, 2012, the firm filed a notice of appearance on behalf of the Plan Trustee in this Case, along with a stipulation signed by Berger Singerman and Lennar Corp.'s counsel, agreeing to move the scheduled Case Management Conference.  *See* **Ex. 5** [Stip.].  Neither Lennar Corp. nor U.S. Home objected to the firm's appearance at that time.

The Motion was filed September 23, 2012, in state court.

### III.   DISQUALIFICATION IS AN EXTRAORDINARY REMEDY

It is well settled that "[d]isqualification of a party's chosen counsel is an extraordinary

remedy and should be resorted to sparingly." *Quail Cruises Ship Mgmt. Ltd. v. Agencia De Viagens CVC Limitada*, No. 09-cv-23248, 2010 WL 2926042, at * 3 (S.D. Fla. Jul. 23, 2010) (quoting *Manning v. Cooper*, 981 So. 2d 668, 670 (Fla. 4th DCA 2008)). The "party seeking disqualification of an attorney carries a heavy burden and must meet a high standard of proof before an attorney is disqualified." *In re Jet 1 Ctr., Inc.*, 310 B.R. 649, 654 (Bankr. M.D. Fla. 2004). "Because a party is presumptively entitled to the counsel of his choice, the right may be overridden only if 'compelling reasons' exist." *Quail Cruises*, 2010 WL 2926042, at *3 (quoting *Texas Catastrophe Prop. Ins. Ass'n v. Morales*, 975 F.2d 1178, 1181 (5th Cir. 1992)). Further, "[m]otions for disqualification are generally viewed with skepticism because . . . such motions are often interposed for tactical purposes." *Alexander v. Tandem Staffing Solutions, Inc.*, 881 So. 2d 607, 608-09 (Fla. 4th DCA 2004); *see also Hernandez v. Royal Caribbean Cruises Ltd.*, No. 10-cv-21636, 2010 WL 3522210, at  *1 (S.D. Fla. Sept. 7, 2010).

As set forth below, Lennar Corp. has shown no "compelling reasons" to support the "extraordinary remedy" of depriving the Plan Trustee of his counsel of choice in this Case.

## IV.      THERE IS NO BASIS TO DISQUALIFY BERGER SINGERMAN

Lennar Corp. argues that Berger Singerman should be disqualified as counsel to the Plan Trustee on the basis that Lennar Corp. is a "current" client of the firm and therefore, pursuant to Rule 4-1.7, must consent to the firm's representation of the Plan Trustee against it in this Case.  In fact, as set forth in detail below, Berger Singerman has not represented Lennar Corp. since 2009, and the firm's representation of Lennar Homes, a separate entity, in the JB Ranch Matter is insufficient to transform Lennar Corp. from a former client to a current one. As a result, Rule 4-1.9 applies here (not Rule 4-1.7), and Lennar Corp. has made no attempt to satisfy the disqualification requirements of that rule, much less actually meet them.

A.      **Lennar Corp. Is Not a Current Client and Thus Rule 4-1.7 Does Not Apply.**

Lennar Corp. argues that Berger Singerman should be disqualified under Rule 4-1.7, the current client conflicts rule, because, until recently, the firm represented Lennar Homes in the JB Ranch Matter.  As set forth below, Lennar Corp. is not a "current" client.

1.      **The firm does not currently represent Lennar Corp. in any matter.**

Lennar Corp. concedes in its Motion that the firm does not currently represent it directly in *any* ongoing matters.  *See* Mot. at 9 ("Berger Singerman does not currently represent Lennar Corp. directly as the named client in an active matter . . .").  Indeed, the firm has not represented Lennar Corp. in any matter since October 2009.  *See* **Ex. 2** at ¶ 7 [Berger Decl.].

2.      **The firm's representation of Lennar Homes in the JB Ranch Matter does not transform Lennar Corp. into a current client.**

To escape the fact that Berger Singerman has not represented Lennar Corp. on any matter for more than *2 1/2 years* before the firm appeared in this Case, Lennar Corp. claims that it is a current client through the representation of its subsidiary, Lennar Homes, in the JB Ranch Matter.

Consistent with the well-established principle that a parent and its subsidiary are separate and distinct legal entities, the comments to Rule 4-1.13 ("Organization as Client") are clear that representing one organizational client does not equate with representing its affiliates:

> [A] lawyer or law firm who represents or has represented a corporation (or other organization) ordinarily is not presumed to also represent, solely by virtue of representing or having represented the client, an organization (such as a corporate parent or subsidiary) that is affiliated with the client.

R. Reg. Fla. Bar 4-1.13 cmt.;  *Am. Int'l Group, Inc. v. Cornerstone Bus., Inc.*, 872 So. 2d 333, 336 (Fla. 2d DCA 2004) ("a parent [] and its wholly-owned subsidiary are separate and distinct legal entities"); *Reynolds Am., Inc. v. Gero*, 56 So. 3d 117 (Fla. 3d DCA 2011) (same).

There are exceptions to this general rule against the presumed representation of affiliates, such as "when an affiliate actually is the alter ego of the organizational client or when the client has revealed confidential information to an attorney with the reasonable expectation that the information would not be used adversely to the client's affiliate(s)."  R. Reg. Fla. Bar 4-1.13 cmt.  "Absent such an exception, an attorney or law firm is not ethically precluded from undertaking representations adverse to affiliates of an existing or former client."  *Id.*

Here, Lennar Corp. argues that Lennar Homes is its alter ego, and, therefore, the "alter ego" exception applies.  In order to establish this exception, Lennar Corp. must show: (1) that Berger Singerman currently represents Lennar Homes in the JB Ranch Matter and (2) that Lennar Homes actually is its alter ego.  As set forth below, Lennar Corp. does not show either.

### a.      The firm does not represent Lennar Homes in the JB Ranch Matter.

The parties have reached a final settlement in the JB Ranch Matter, thus, there would be nothing left for the firm to do in the matter.  *See* **Ex. 6**.  Prior to the settlement, on July 27, 2012, the firm advised Lennar Homes that it was terminating its representation of Lennar Homes in the JB Ranch Matter.  *See* **Ex. 4** at ¶ 8 [Carriuolo Decl.].  In August 2012, the firm moved to withdraw as counsel for Lennar Homes in the JB Ranch Matter.  *See id.*  The decision to withdraw and terminate the representation came after nearly two years of following Lennar Homes's explicit instructions to "stand down," performing largely ministerial work for Lennar Homes,[6] and at a point when the litigation essentially was settled without the firm's involvement.  The court heard argument on November 8, 2012, and granted the firm's motion to withdraw.  *See id.* at Ex. D thereto [Order].  Accordingly, there is no dispute that the firm no

---

[6]   Furthermore, in May 2012, when Berger Singerman first appeared in this action, no work was being performed on behalf of Lennar Homes in the JB Ranch Matter.  *See* **Ex. 4** at ¶ 6 [Carriuolo Decl.].

longer represents Lennar Homes in the JB Ranch Matter.

Lennar Corp. specifically notes in its Motion that, in July 2012, Berger Singerman performed work on behalf of Lennar Homes in the JB Ranch Matter.  *See* Mot. at 3 n.1. Indeed, there is no dispute that, after two years of performing little to no work on behalf of Lennar Homes, and approximately two months after the firm appeared in this Case, Lennar Homes contacted the firm to assist with the relatively minor task of amending HOA documents to facilitate the settlement of the JB Ranch Matter.  *See* **Ex. 4** at ¶ 7 [Carriuolo Decl.].  This should be seen for exactly what it is – a transparent attempt to manufacture a conflict where none existed.  Lennar Homes should not be permitted to create a conflict by asking Berger Singerman perform a minor task after Lennar Corp. was expressly on notice that the firm represented the Plan Trustee in this Case.  *See Alexander*, 881 So. 2d at 608-09 (stating that motions for disqualification are generally viewed with skepticism because they are often used for tactical purposes); *Hernandez*, 2010 WL 3522210, at *1 (same).

Despite that effort to trump up a conflict, the fact remains that Berger Singerman does not represent Lennar Homes in the JB Ranch Matter, and the that matter has been resolved.  For that reason alone, Lennar Corp.'s argument that it is a "current client" should be rejected.

### b.     Lennar Corp. is not Lennar Homes's alter ego.

Even assuming Lennar Corp. could avoid the fact that Berger Singerman no longer represents Lennar Homes in the JB Ranch Matter and that the JB Ranch Matter itself has settled, Lennar Corp. cannot establish that it is the "alter ego" of Lennar Homes for purposes of the attorney-client relationship with the firm.

Lennar Corp. and Berger Singerman expressly rejected the extension of the attorney-client relationship to "alter egos."  The engagement letters between Lennar Corp. and the firm

treated Lennar Corp. and its subsidiaries as separate and distinct entities and made clear that the firm did not represent Lennar Corp.'s subsidiaries absent express agreement to do so: "We do not and will not represent any person or entity other than the Client, regardless of any direct or indirect affiliation with the Client, unless we expressly agree to do so in writing." **Ex. 3** [Eng. Ltrs.]. Mr. Marlin, Lennar Corp.'s Deputy General Counsel, reviewed, approved, and signed five engagement letters containing that exact same provision. Mr. Marlin has "executed many engagement letters" and "been responsible for retaining outside counsel on behalf of the Lennar Entities for hundreds of matters." Mot. at Ex. A, ¶ 11. By agreeing to that provision, Lennar Corp. has contractually disclaimed an alter ego relationship with its subsidiaries, including Lennar Homes, for purposes of its attorney-client relationship with the firm.[7]

Lennar Corp. relies solely on *Estate of Jones v. Beverly Health & Rehabilitation Servs., Inc.*, 68 F. Supp. 2d 1304 (N.D. Fla. 1999), to support its claim that Lennar Homes is its alter ego and thus should be disqualified under Rule 4-1.7, the current client conflict rule. *Jones*, however, does not address Rule 4-1.7. Instead, the *Jones* court disqualified the plaintiff's attorney under Rule 4-1.9, the former client conflict rule. It was undisputed that the plaintiff's attorney had previously represented the defendant's subsidiary, BEF, in a nursing home malpractice case. *See id.* at 1307-08. The court found that the prior attorney-client relationship extended to the defendant, BHRS, and the defendant's parent, BEI, and that the new matter was substantially related to the prior representation. *See id.* at 1310-11.

---

[7]  Even if Lennar Corp. could escape the import of the five engagement letters, the alter ego exception is extremely narrow. It is limited to those circumstances in which "an affiliate *actually is* the alter ego of the organizational client." R. Reg. Fla. Bar 4-1.13 cmt. (emphasis added). Where a subsidiary is the parent's alter ego, the subsidiary's independent corporate existence is disregarded, and the entities are treated as one. *See Hillsborough Holdings Corp. v. Celotex Corp.*, 166 B.R. 461, 469 (Bankr. M.D. Fla. 1994). That is, they are treated as one entity *for all purposes*, including liability. Thus, if Lennar Corp. concedes that Lennar Homes actually is its alter ego, it potentially exposes itself to liability for all of Lennar Homes's and other subsidiaries' actions. *See, e.g., Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114 (Fla. 1984). Lennar Corp. cannot pick and choose when to treat its subsidiaries as alter egos.

In determining that the attorney-client relationship included the defendant, BHRS, as well as the defendant's parent company, BEI, the court focused on several factors not present here.  First, the court reviewed the prior engagement letter, which provided that counsel had "been retained to represent the interests of BEI [defendant's parent company] *and/or its subsidiary*."  *Id*. at 1309 (emphasis added).  The court further found that, "*[b]ased on this letter alone*, it is clear that [counsel] was retained by not only BEF [the defendant's subsidiary] but its ultimate parent, BEI [the defendant's parent company] . . ."  *Id*. (emphasis added).  The attorney's prior partner, who attended the client meetings leading to the prior engagement, testified that it was clear that they represented BEI, the parent, and *all* of its affiliates.  *See id.*

Here, as set forth above, the language in the very first paragraph of all five signed engagement letters between Lennar Corp. and the firm clearly stated that the firm did not represent Lennar Corp.'s subsidiaries absent express agreement to do so.  *See* **Ex. 3** [Eng. Ltrs.].  Therefore, to the extent that the firm chose to represent a Lennar Corp. subsidiary, such as Lennar Homes, it was understood that it was a new client and that the engagement was separate from the firm's representation of Lennar Corp.  Accordingly, once the firm stopped representing Lennar Corp. in 2009, Lennar Homes remained as a separate, distinct client.

Second, the *Jones* court found that the substance of the litigation involved in the later representation was precisely the same type of litigation which the attorney handled when he previously represented BEI, *i.e.,* nursing home litigation.  *See* 68 F. Supp. 2d at 1309.  All outside counsel for BEI and its affiliates reported to a single individual who worked at the same claims management company.  *See id.* at 1309-10.  She was responsible for supervising both the prior nursing home litigation for the defendant's subsidiary and the subject nursing home litigation against the defendant.  *See id.* at 1309.  In the prior action, she discussed defense

13

strategies with the plaintiff's attorney, and she copied him on confidential internal reports discussing the prior case, BEI's strategies, and the assessment of liability and damages. *See id.*

In contrast, here, there was no such centralized reporting requirement or supervision by a single individual at the same company. Instead, Mr. Marlin, Lennar Corp.'s Deputy General Counsel, supervised and communicated with Berger Singerman with respect to the representations of *Lennar Corp.*, and Mr. Bavouset, Lennar Homes's Regional Vice President, was the firm's primary contact regarding the firm's representation of *Lennar Homes* in the JB Ranch Matter. *See* **Ex. 2** at ¶ 4 [Berger Decl.]; **Ex. 4** at ¶ 4 [Carriuolo Decl.].

The *Jones* court also found significant that, in the prior representation, the plaintiff's attorney received BEI's guidelines on how to handle nursing home malpractice cases, as well as BEI's and its subsidiaries' policies, procedures, practices defenses, and substantive legal strategies regarding how to litigate nursing home malpractice cases asserted against BEI and any of its affiliates. 68 F. Supp. 2d at 1308, 1309-10. After leaving his prior law firm where he represented "BEI and/or its subsidiary," the plaintiff's attorney sued BEI's affiliate, BHRS, for nursing home malpractice — the exact same type of litigation for which he was previously provided all of BEI and its subsidiaries' legal strategies and defenses. *Id.* at 1308.

In light of BEI and its subsidiaries' unified strategy for handling nursing home malpractice, the court in *Jones* understandably was concerned that the attorney had received information regarding how BHRS planned to litigate the new nursing home malpractice case and found that the attorney had received confidential information that **could be used against his former client**. *See id.* at 1309-10. Accordingly, the court found that the parent's "supervision and organizational handing of nursing home claims [was] such that the attorney client relationship must include BEI and its subsidiaries." *Id.* at 1310 n.5. In short, the *Jones*

court determined that the attorney could not effectively switch sides in the same type of case and thus use the information he gained from his prior clients against them in the new litigation.

In stark contrast to *Jones*, the firm's representation of the Plan Trustee in this Case bears no relationship whatsoever to the prior representations of Lennar Corp. or Lennar Homes, and Lennar Corp. has pointed to no information that the firm obtained in its prior representation that it could use against Lennar Corp. here.   Lennar Corp. emphasizes that it provided guidelines to the firm.   However, unlike the substantive guidelines in *Jones*, the Lennar Corp. guidelines consisted of general policies and administrative procedures, exactly the sort of generic, administrative, ministerial policies that do not give a lawyer any advantage in subsequent adverse litigation.   *See* **Ex. 2** at Ex. A [Guidelines]; *Morgan Stanley & Co., Inc. v. Solomon*, No. 08-CV-81330, 2009 WL 413519, at *5 (S.D. Fla. Feb. 19, 2009) ("In the case of an organization client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation…") (quoting *Health Care & Ret. Corp. v. Bradley*, 944 So. 2d 508, 512 (Fla. 4th DCA 2006) (quoting R. Reg. Fla. Bar 4-1.9 cmt.)).

Furthermore, the *Jones* court emphasized that counsel "'was privy to information not available through discovery' and had a 'wealth of information' relating to policies, procedures and practices of BEI and its subsidiaries 'which would not have been available to [counsel] but for the attorney-client privilege.'"   68 F. Supp. 2d at 1309.   Here, Mr. Marlin provided the guidelines to the firm in connection with the firm's representation of ***Lennar Corp.*** and not in connection with the firm's representation of Lennar Homes in the JB Ranch Matter.   *See* **Ex. 2** at ¶ 6 [Berger Decl.].   Because the firm would have received those guidelines even if it never represented Lennar Homes, the attorney-client privilege between the firm and Lennar Homes is not the source of any such confidential information.

Accordingly, even assuming that the firm still represented Lennar Homes in the JB Ranch Matter, Lennar Corp. is not a current client of the firm, and Rule 4-1.7 does not apply.

**B.      Rule 4-1.9 (Conflict of Interest; Former Client) Applies.**

Because Lennar Corp. is a former client of Berger Singerman, Rule 4-1.9, the former client conflicts rule applies, and Lennar Corp. must show that the prior representation is substantially related to the matters in this Case in order to show a conflict exists.  Specifically, Rule 4-1.9 provides in pertinent part that:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> (a)  represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent; [or]
>
> (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known . . .

No conflict exists here under either Rule 4-1.9(a) or (b).  This Case is not substantially related to any prior representation of Lennar Corp., and the firm has no confidential information that it could use to the disadvantage of Lennar Corp. in this Case.

**1.      The matters are not substantially related.**

Under Rule 4-1.9, "[m]atters are 'substantially related' . . . if they involve the same transaction or legal dispute, or if the current matter would involve the lawyer attacking work that the lawyer performed for the former client."  R. Reg. Fla. Bar 4-1.9 cmt.  TBW has sued the defendants in connection with a fraudulent scheme that resulted in TBW originating first and second mortgage loans in connection with sham sales transactions involving  condominium units at a Lennar Corp./U.S. Home development in Ft. Myers.  *See* Am. Cmplt. at ¶ 25.

Lennar Corp. cannot show, and does not argue, that this Case is at all related to the prior

representations of Lennar Corp., much less substantially related.  Indeed, they are not.  *See* **Ex. 2** at ¶ 12 [Berger Decl.].  Accordingly, there is no conflict under Rule 4-1.9(a).

### 2. The firm has no confidential information to use against Lennar Corp.

Likewise, Berger Singerman has no confidential information about Lennar Corp. from the prior representations that could be used against it in this Case in violation of Rule 4-1.9(b).  Lennar Corp. does not argue to the contrary.[8]  This Case does not relate to the firm's prior representation of Lennar Corp., and Berger Singerman did not learn any specific facts about Lennar Corp. during its prior representation that is relevant to any issue in this Case.  *See* **Ex. 2** at ¶ 12 [Berger Decl.].  Therefore, Rule 4-1.9(b) provides no basis for disqualification here.

## C. Lennar Corp. Has Waived Any Conflict of Interest.

Lennar Corp. has waived any purported conflict of interest by (1) expressly consenting to Berger Singerman's representation of a client directly adverse to Lennar Corp. in litigation and (2) failing to timely move for disqualification.

### 1. Lennar Corp.'s Deputy General Counsel repeatedly waived conflicts.

Under Rule 4-1.7, a law firm may represent a client directly adverse to another client if: (i) each affected client gives informed consent, confirmed in writing or clearly stated on the record at a hearing; and (ii) the law firm reasonably believes that it will be able to provide competent and diligent representation to each affected client.  Both conditions are satisfied here.

It is undisputed that Lennar Corp.'s Deputy General Counsel, Mr. Marlin, signed five different engagement letters on behalf of Lennar Corp., each of which contained the following

---

[8]  The comment to Rule 4-1.9 explains that, "[i]n the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation . . ." R. Reg. Fla. Bar 4-1.9 cmt.

express waiver of future conflicts:

> You understand that, as is that case with any law firm, way may from time to time represent <u>in unrelated matters</u> a client whose interests may conflict with those of another client.  Thus, for example, there may be instances in which we may represent the Client in a litigation or other matter and, at the same time, we may represent another party in connection with an unrelated litigation or other matter adverse to the Client.  As part of our engagement, the Client consents to such representations so long as they do not involve a direct conflict in a specific matter in which we represent the Client.

**Ex. 3** [Eng. Ltrs.]  (emphasis in original).

As Mr. Pera explains, Florida law is clear that general prospective conflict waivers are enforceable, particularly where, as here, the client is sophisticated and the client had independent counsel available to review the agreement.  *See* **Ex. 1** at ¶¶ 14, 18 [Pera Decl.].  In *General Cigar Holdings, Inc. v. Altadis, S.A.*, the court found that a future waiver was effective because it was obtained from knowledgeable and sophisticated parties, and outside counsel and the representatives of the corporation reviewed the engagement letter.  144 F. Supp. 2d 1334, 1339 (S.D. Fla. 2001).  In reaching that conclusion, the court relied on *Fisons Corp. v. Atochem N. Am., Inc.,* No. 90-CV-1080(JMC), 1990 WL 180551 (S.D.N.Y. Nov. 14, 1990), and stated that, "[i]n *Fisons*, standing consent for concurrent adverse representation was deemed adequate where the corporation, a 'knowledgeable and sophisticated client,' had consented to potential future adverse actions."  *General Cigar*, 144 F. Supp. 2d at 1339.

Mr. Marlin's own Declaration establishes that he read the engagement letters, including the prospective conflict waiver, and then signed those letters.  *See* Mot. at Ex. A, ¶ 10.  His Declaration also establishes that, as Deputy General Counsel who reviewed and signed hundreds of engagement letters and supervised numerous significant litigation matters for Lennar Corp., Mr. Marlin is both knowledgeable and sophisticated.  *See id.* at Ex. A, ¶ 11.

Having read the conflict waiver before he signed the engagement letters, Mr. Marlin saw that the waiver expressly included a waiver for future litigation against Lennar Corp.  Given his experience, he also clearly understood what litigation entails and the variety of claims that can be asserted in litigation.  He did not seek to place any limitations on the scope of the waiver.  Instead, he accepted the future conflict waiver as it was presented, and signed the engagement letter without any modifications.   His present assertion that he is shocked that Berger Singerman is relying upon that conflict waiver in this matter is, at best, self-serving.

Lennar Corp.'s reliance on District of Colombia Bar Ethical Opinion 309 ("Opinion 309") is to no avail.  Contrary to Lennar Corp.'s argument, Opinion 309 draws a clear distinction between general prospective waivers by unsophisticated clients and those by sophisticated clients with independent counsel, including in-house counsel.  Whereas Opinion 309 recognizes that an unsophisticated client might not appreciate that the waiver includes future allegations of fraud, the same concerns do not apply to sophisticated clients, especially those represented by counsel.  *See id.*  In fact, Opinion 309 specifically states: "An advance waiver given by a client having independent counsel (in-house or outside) available to review such actions presumptively is valid, however, even if general in character." *Id.*   That is precisely the situation here; Lennar Corp. is a knowledgeable and sophisticated client, and the prospective waivers were reviewed and signed by its own experienced counsel.[9]

---

[9]  Lennar Corp.'s citation to *Fla. Ins. Guar. Ass'n, Inc. v. Carey Canada*, 749 F. Supp. 255 (S.D. Fla. 1990), is misplaced.  The supposed consent in that case was based on the failure of low-level claims adjusters to object to adverse representation, not on any written engagement letter.  The court concluded that such consent was "too rarified, too contingent, and too solicitous of FIGA's non-lawyer employees to rise to the level of proper standing consent." *Id.* at 260.

Lennar Corp. also cites two cases for the proposition that the waiver here is too general: *Worldspan, L.P. v. Sabre Group Holdings, Inc.*, 5 F. Supp. 2d 1356 (N.D. Ga. 1998) and *McKesson Info. Solutions, Inc. v. Duane Morris LLP*, No. 2006-cv-121110 (Super. Ct. Fulton Co. Ga. Nov. 9, 2006).  In *Worldspan*, the court concluded that the future waiver was ineffective because the language in that agreement did not

More recently, the New York City Bar Association expressly rejected the notion that sophisticated clients do not understand that such waivers include possible claims of fraud:

> The sophistication of the client also bears in other ways on the scope of the permissible waiver.  For example, there are a few cases suggesting that a client cannot consent to have his or her own lawyer bring claims against the client charging fraud.  These cases are best understood as reflecting skepticism about whether the client understood and consented to the waiver.  ***They have little relevance to waivers by sophisticated clients, particularly when the client is a large institution and the claims of misconduct involve personnel not involved in the representation of the client.***

Ass'n of the Bar of the City of New York Comm. on Prof'l & Judicial Ethics, Formal Op. 2006-1 (2006) (emphasis added).  Because Lennar Corp. is a sophisticated client whose own in-house counsel repeatedly reviewed, approved, and signed the waivers, the concerns relating to allegations of fraud are not present here, and the waivers are valid.

### 2.    The purported conflicts of interest are waivable.

Lennar Corp. argues that the "nature" of this Case presents an unwaivable conflict because Berger Singerman cannot adequately represent "Lennar Corp." while simultaneously asserting fraud claims against it.  Of course, as set forth above, the firm is not actually representing Lennar Corp. in any matters.  Nor is it still representing Lennar Homes in the JB Ranch Matter.  For that reason alone, Lennar Corp.'s position makes no sense.

Even ignoring the fact that the representations of Lennar Corp. and of Lennar Homes in

---

foreshadow ***directly adverse litigation.***  Here, the engagement letter clearly and explicitly indicates the possibility of adverse "litigation" directly against Lennar Corp.  *See* **Ex. 1** at ¶ 21 [Pera Decl.].

In the *McKesson* order cited by Lennar Corp., the court emphasized that there was no indication that the conflicting matters would conclude in the near future.  No. 2006-cv-121110 (Super. Ct. Fulton Co. Ga. Nov. 9, 2006).  The continuing nature of the conflict was critical to the court's decision.  On March 8, 2007, the *McKesson* court vacated as moot its injunction of disqualification after the firm withdrew from representing McKesson in the pre-existing bankruptcy matter.  *See* No. 2006-CV-121110 (Super. Ct. Fulton Co. Ga. Mar. 6, 2007) (attached as **Ex. 12**).  Likewise, here, the court granted the firm's motion to withdraw in the JB Ranch Matter, and the parties finalized their settlement, which Lennar Corp. had been handling without the firm's assistance.  *See* **Ex. 4** at ¶ 7 [Carriuolo Decl.]; **Ex. 6**.

the JB Ranch Matter have ended, nothing about the "nature" of this action can justify the extraordinary remedy of disqualifying the Plan Trustee's choice of counsel.[10]   Lennar Corp. fails to cite any case disqualifying an attorney on the basis that allegations of fraud against a client present an unwaivable conflict.   Both cases cited by Lennar Corp., *General Cigar* and *Fisons*, **denied** the motions for disqualification and found that the prospective conflict waivers were valid, despite fraud-like allegations against the clients.   *See General Cigar*, 144 F. Supp. 2d at 1340; *Fisons*, 1990 WL 180551, at *7.   Lennar Corp. selectively quotes a portion of *General Cigar* where the court noted that "allegations of fraud in the unrelated suit" against a current client "***may*** hinder an attorney's ability to adequately represent the client in the other action."   Mot. at 14 (emphasis added).   However, the court went on to actually deny the motion to disqualify.   144 F. Supp. 2d at 1340.   The court found that allegations of felony violations of antitrust laws and false and misleading statements did not provide an independent basis for disqualification, and the general prospective waiver was valid.   *See id.* at 1341-42.

Lennar Corp. offers no explanation as to how the firm's representation of the Plan Trustee in this Case would actually affect its representation of Lennar Homes in the JB Ranch Matter.   This Case has nothing to do with Lennar Homes, and the JB Ranch Matter has been settled.   *See* **Ex. 6**.   Moreover, Lennar Homes handled the settlement negotiations in the JB Ranch Matter almost entirely on its own, with minimal assistance from the firm.   Indeed, in 2010, Lennar Homes directed the firm to "stand down" in the case, and the firm followed those instructions.   *See* **Ex. 4** at ¶ 6 [Carriuolo Decl.] and Ex. A thereto.   Thus, even if the "nature" of

---

[10] Lennar Corp. relies on the comments to Rule 4-1.7 to support its argument that the purported conflict is unwaivable.   The comments to Rule 4-1.7 do not, however, provide that fraud claims present an unwaivable conflict.   Instead, they state: "The propriety of concurrent representation **can** depend on the nature of the litigation.   For example, a suit charging fraud entails conflict to a degree not involved in a suit for a declaratory judgment concerning statutory interpretation."   (emphasis added).

a suit against the client could, in certain circumstances, hinder an attorney's ability to represent the client in the other action, those circumstances do not exist here.

Because Berger Singerman does not currently represent Lennar Corp. (either directly or indirectly) and the allegations of fraud in this Case cannot affect any ongoing representation of Lennar Corp., the purported conflicts are waivable and were in fact waived.

### 3.      Lennar Corp.'s Motion is untimely.

By failing to timely move for disqualification upon learning the facts which form the basis of its Motion, Lennar Corp. has waived any purported right to object to Berger Singerman's representation of the Plan Trustee in this action.   "A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion." *Cox v. Am. Cast Iron Pipe, Inc.*, 847 F.2d 725, 729 (11th Cir. 1988) (quoting *Jackson v. J.C. Penney Co.*, 521 F. Supp 1032, 1034-35 (N.D. Ga. 1981)); *St. Paul Fire & Marine Ins. Co. v. Sea Quest Int'l, Inc.*, No. 8:00-CV-571, 2001 WL 36393137, at *3 (M.D. Fla. Oct. 15, 2001). Failure to file a timely motion to disqualify counsel operates as a waiver of the right to object. *See*, *e.g.*, *Cox*, 847 F.2d at 731; 729; *Quail Cruises*, 2010 WL 2926042, at * 6.

Where the party moving for disqualification had every opportunity to object to opposing party's counsel but failed to do so, the party has waived its right to seek disqualification.  *See Cox*, 847 F.2d at 731; *see also Artnett v. Mid-Continental Cas. Co.*, No. 8:08-CV-2373, slip op. at 3 (M.D. Fla. Apr. 13, 2010) (attached hereto as **Ex. 13**).   Berger Singerman has openly represented the Committee and Plan Trustee in the TBW Bankruptcy for years:

| Event[11] | Date | Lennar Corp.'s Response |
|---|---|---|
| Berger Singerman appeared on behalf of the Committee in the TBW Bankruptcy. | Sept. 21, 2009 | No response. |
| Paul Singerman argued on behalf of the Committee at an auction hearing in the TBW Bankruptcy that Mr. Marlin was aware of and stated he would "love to attend." | Jan. 2010 | No objection.  In fact, Mr. Marlin stated that he had heard the firm "did a great job with the auction." |
| Disclosure Statement in the Bankruptcy Action specifically refers to this Case and indicates that further investigation may reveal that such actions may be asserted in the Bankruptcy. | Sept. 21, 2010 | No response. |
| Berger Singerman files motions, complaints, and other filings in the TBW Bankruptcy on behalf of the Plan Trustee. | Beginning on Aug. 18, 2011 | No response. |
| Berger Singerman appeared on behalf of the Plan Trustee in this Case. | May 24, 2012 | Motion to Disqualify not filed for nearly four months. |

Lennar Corp.'s suggestion that it was unaware of Berger Singerman's representation until July 20, 2012, is incorrect on multiple levels.  First, Lennar Corp. has known about the firm's role in the TBW Bankruptcy since **at least January 2010**.  Lennar Corp.'s Deputy General Counsel was following the TBW bankruptcy closely enough to know exactly when the January 2010 auction hearing was going to take place and even commented to the firm attorney who handled the auction that he wished he could attend.  *See* **Ex. 2** at ¶ 15 and Ex. B thereto [Berger Decl.].  That Lennar Corp. has been following the TBW Bankruptcy makes perfect sense in light of the fact that TBW initiated this Case against Lennar Corp. in August 2008 and then filed for bankruptcy in August 2009.  *See* **Ex. 7** [Dkts. excerpts].  The notion that Lennar Corp., with its sophisticated and knowledgeable counsel who were clearly following the TBW Bankruptcy, did not understand the firm's role until late July 2012 is not credible.

---

[11] *See* **Ex. 2** at ¶ 15 [Berger Decl.] and Ex. B thereto; **Ex. 8** [Notice]; **Ex 9** [7/21/11 Order excerpts]; **Ex. 14** [Discl. Stmt excerpts.]; **Ex. 5** [Stip.]; **Ex. 11** [8/18/11 Mot.].

Second, at the very latest, Lennar Corp. received actual notice of Berger Singerman's representation of the Plan Trustee in this Case when the firm filed its notice of appearance in this Case on May 24, 2012 — several months before it filed the present Motion.  Lennar Corp. is charged with knowledge of the facts communicated to its agents, including its counsel.[12] There can be no dispute that Lennar Corp.'s counsel received express notification of Berger Singerman's appearance — on May 24, 2012, he signed a stipulation with Berger Singerman in which the parties agreed to move the scheduled Case Management Conference.  *See* **Ex. 5** [Stip.].  Lennar Corp. waited another four months to move to disqualify the firm.

Courts repeatedly have held that such a delay operates as a waiver of the right to object to the adverse representation.  *See, e.g., Concerned Parents of Jordan Park v. Housing Auth. of St. Petersburg*, 934 F. Supp. 406, 408 (M.D. Fla. 1996) (finding that defendant waived right to object where it waited until five months after the filing of the suit and eight months after the filing of a related case, which had put defendant on notice of the conflict to object); *Artnett*, No. 8:08-CV-2373, slip op. at 3-5 (M.D. Fla. Apr. 13, 2010) (finding defendants had waived the right to seek disqualification of plaintiff's attorney because defendants knew or should have known of the grounds to seek the law firm's disqualification five months before filing the motion); *Quail Cruises*, 2010 WL 2926042, at *6 (holding the defendants had waived its right to seek disqualification where they had three months notice of the firm's representation of the plaintiff prior to the lawsuit being filed, but waited another six months to seek disqualification).

There is no question that Lennar Corp. knew for years that the firm was actively

---

[12]   *See Ruotal Corp., N.W., Inc. v. Ottati,* 391 So. 2d 308, 309 (Fla. 4th DCA 1980) ("It is axiomatic that knowledge of the agent constitutes knowledge of the principal so long as the agent received such knowledge while acting within the scope of his authority."); *Applefield v. Comm. Std. Ins. Co.,* 176 So. 2d 366 (Fla. 2d DCA 1965) (imputing attorney's knowledge to client); *Sebree v. Schantz, Schatzman, Aaronson & Perlman,* 963 So. 2d 842 (Fla. 3d DCA 2007) (litigant is charged with counsel's knowledge).

involved in the TBW Bankruptcy, first on behalf of the Committee and then on behalf of the

Plan Trustee (who has *exclusive* authority over TBW's claims against Lennar Corp. here), and

waited over four months after the firm's official appearance in this Case to file its Motion.

Lennar Corp.'s delay constitutes a waiver of its right to object to the firm's representation.

**D.      The Lennar Homes Employees Do Not Create a Conflict.**

Lennar Corp. claims that Berger Singerman's representation of the Plan Trustee in this

Case is directly adverse to ***Lennar Homes*** because two of the defendants, Matthew Devereaux

and Andrew Sorensen, are employees of Lennar Homes. *See* Mot. at 21-24.  This argument

fails for several factual and legal reasons, including:

- Berger Singerman never represented Mr. Devereaux or Mr. Sorensen.  *See* **Ex. 4** at ¶ 9 [Carriuolo Decl.].

- In the course of representing Lennar Homes in the JB Ranch Matter, the Berger Singerman attorneys have had no interactions with either Mr. Devereaux or Mr. Sorensen, and their names never came up in any conversations with Lennar Homes or its adversaries.  *See id.*

- It is undisputed that the firm no longer represents Lennar Homes in the JB Ranch Matter; this fact alone is fatal to Lennar Corp.'s claim of a conflict based on Lennar Homes's employees.[13]  *See id.* at Ex. D [Order].

- Lennar Homes does not currently employ Mr. Sorensen.  *See* Mot. at Ex. B, ¶ 3.

- Mr. Devereaux and Mr. Sorensen are being sued solely in their capacity as employees of Lennar Corp. and/or U.S. Home, not Lennar Homes.  *See* **Ex. 15** at ¶¶ 18, 19 [Am. Cmplt excerpts].  Mr. Sorensen was a division president at Lennar Corp., and Mr. Devereaux is a director of sales at Lennar Corp., and was the director of operations at Lennar Corp. prior to March 2007.  *See id.*; **Ex. 16** at ¶ 17 [Sorensen Ans. excerpts]*;* **Ex. 17** at ¶ 16 [Devereaux Ans. excerpts]. There is no mention of Lennar Homes anywhere in the Amended Complaint, much less in connection with Mr. Devereaux or Mr. Sorensen.

---

[13] The firm moved to withdraw as counsel in the JB Ranch Matter, and the court granted its motion.  *See* **Ex. 4** at Ex. D [Order].  Contrary to Lennar Corp.'s claim, the firm did not "dump" Lennar Homes for another client.  The firm was not actively representing Lennar Homes in the JB Ranch Matter in May 2012 when it appeared in this Case.  At that point, the firm had been under "stand down" orders for over 18 months.

- Lennar Corp. now argues that Lennar Homes is not bound by the prospective conflict waivers in the engagement letters signed by Lennar Corp. *See* Mot. at 21. This is directly contrary to its earlier claim that Lennar Corp. and Lennar Homes are "alter egos" and should be treated as one entity. If they are alter egos, the prospective conflict waiver binds Lennar Homes as well.

- If Lennar Homes and Lennar Corp. are not alter egos, then Lennar Corp. has no standing to seek to disqualify the firm on behalf of a purported conflict affecting Lennar Homes. *See USX Corp. v. TIECO, Inc.*, 929 F. Supp. 1455, 1459 (N.D. Ala. 1996) (finding the defendants lacked standing to seek disqualification of the plaintiffs' attorney based on an alleged conflict with a nonparty former client).

Lennar Corp. cites several cases to try to address its fundamental problem of claiming a conflict based on a lawsuit against employees of a client rather than the client itself; none of them are on point. In two of the cases, the attorneys were acting ***directly*** adverse to the current client. *See Cal. Canners & Growers v. Bank of Am.*, 74 B.R. 336, 342 (N.D. Cal. 1987) (finding a conflict where law firm extensively assisted in preparing a lawsuit directly against the firm's own client, whom the firm represented in substantially related cases); *Fund of Funds, Ltd. v. Arthur Anderson & Co.*, 435 F. Supp 84, 96 (S.D.N.Y. 1997) (finding a conflict where the law firm extensively participated in investigating and suing its own client).

The other two cases are equally inapplicable here. *See Avacus Partners v. Brian*, No. 11101, 1990 WL 6576 (Del. Ch. Jan. 23, 1990) (finding a conflict where law firm had to directly discredit its client's work and that work related to matters in which the firm previously represented the client);[14] *United States v. Culp*, 934 F. Supp. 394, 398 (M.D. Fla. 1996) (finding a conflict where the attorney represented a defendant charged with conspiracy, and the attorney's former client was previously charged in the same conspiracy and was going to testify against his current client). Neither case supports Lennar Corp.'s claim that the allegations against Lennar Homes's employee and former employee present any conflict.

---

[14] The case was reversed because the defendant lacked standing to seek disqualification based on a conflict with a non-party. *See In re Appeal of Infotechnology, Inc.*, 582 A.2d 215, 221 (Del. 1990).

**E.**     **Lennar Corp. Never Approached the Firm to Represent it in this Case.**

In a footnote in the Motion, Lennar Corp. half-heartedly suggests that the firm "might" be precluded from representing TBW under Rule 4-1.18 because it "potentially" obtained information about this matter during a discussion with Mr. Marlin in early 2008.  Mot. at 7 n.5. Under Rule 4-1.18, a lawyer who has had discussions with a prospective client "shall not represent a client with interests materially adverse to those of a prospective client in the same or a substantially related matter *if the lawyer received information* from the prospective client that could be used to the disadvantage of that person in the matter." (emphasis added).

It is apparent that Lennar Corp. itself does not believe that there is a violation of this rule.  First, contrary to Lennar Corp.'s vague description of the discussion, Mitchell Berger never engaged in any discussion with Mr. Marlin about the factual or legal issues in this Case or the possibility of the firm representing Lennar Corp. in this matter.  *See* **Ex. 2** at ¶ 9 [Berger Decl.].  It simply did not happen.  In early 2008, when these communications supposedly took place, there was no TBW lawsuit, and Mr. Marlin never discussed any allegations that TBW might make against Lennar Corp. or others regarding fraud or misrepresentations.  *See id.*  The reason that Lennar Corp. does not provide any details is because it cannot.  While Mr. Marlin and Mr. Berger did discuss a potential matter involving TBW (an entity with which Lennar had other dealings), it had nothing to do with this Case or the allegations made here.  *See id.*

Moreover, even assuming that such a discussion did occur (which it did not), Lennar Corp. has not identified a single piece of information that it supposedly communicated to Mr. Berger about this Case that could somehow be used to Lennar Corp.'s disadvantage.  That omission is fatal.  Absent the sharing of such information, there is no violation of Rule 4-1.18. Rule 4-1.18 prohibits a lawyer from representing a client against a prospective client only if the

lawyer **actually** obtained information that could be used against the prospective client; mere "potential" is not enough.[15]  *See RJSG Props., LLC v. Marbella Condo. Devs., LLC*, No. 3:08-CV-302, 2009 WL 3581637, at *6 (N.D. Fla. Oct. 28, 2009) (denying motion to disqualify under Rule 4-1.18 where the attorney swore under oath that he was not in possession of any confidential information that could be used to the potential client's disadvantage).  Here, Mr. Berger has sworn that no such discussion ever took place, and that no such confidential information was ever revealed.  *See* **Ex. 2** at ¶¶ 8-9 [Berger Decl.].

Accordingly, Rule 4-1.18 offers no basis for disqualification.

## V.     EVEN IF THE COURT FINDS THAT A TECHNICAL CONFLICT EXISTS, DISQUALIFICATION IS NOT MANDATORY OR APPROPRIATE

"It is well-settled that disqualification is not mandatory even after a finding that a law firm has violated a conflict of interest rule."  *Great Am. Ins. Co. v. Gen. Contractors & Constr. Mgmt., Inc.*, No. 08-cv-21489, 2008 WL 1994857, at *1 (S.D. Fla. May 6, 2008) (citing *Prudential Ins. Co. of Am. v. Andoyne, Inc.*, 365 F. Supp. 2d 1232, 1236-39 (S.D. Fla. 2005)); *see also Anderson Trucking Serv., Inc. v. Gibson*, 884 So. 2d 1046, 1049 (Fla. 5th DCA 2004) ("Because slavish adherence to conflict of interest rules may produce unwarranted results in some instances, the courts have consistently recognized that 'disqualification of a party's chosen counsel is an extraordinary remedy and should be granted sparingly.'") (quoting *Cunningham v. Appel*, 831 So. 2d 214, 215 (Fla. 5th DCA 2002)).

---

[15] To avoid applying 4-1.18, Lennar Corp. relies on an outdated "appearance of impropriety" standard that no longer exists.  When the current Rules were adopted, that standard was eliminated.  Contrary to Lennar Corp.'s position, in *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630 (Fla. 1991), the Court did not conclude that the Rules continue to require attorneys to avoid the appearance of impropriety.  In fact, the Southern District of Florida has specifically rejected and discredited such a reading of *State Farm* and concluded that "the current Rules of Professional Conduct no longer prohibit the appearance of impropriety." *Armor Screen Corp. v. Storm Catcher, Inc.*, 709 F. Supp. 2d 1309, 1320 (S.D. Fla. 2010); *see also Bujanowski v. Kocontes*, No. 8:08-CV-0390-T-33EAJ, slip op. at 10 (M.D. Fla. May 6, 2010) (concluding that the "appearance of impropriety" is not a ground for disqualifying a party's counsel) (attached as **Ex. 18**).

In *Prudential*, the court concluded that disqualifying the law firm was not mandatory and  explained that the better approach is to apply a balancing test based on: (1) the nature of the ethical violation; (2) the prejudice to the parties; (3) the effectiveness of counsel in light of the violations; (4) the public's perception of the profession; and (5) whether the attempt to disqualify is used as a tactical device or a means of harassment.  *See* 365 F. Supp. 2d at 1237.

Even assuming there were a technical conflict of interest here, under this balancing test, it is clear that disqualification is not warranted.  First, the "nature" of any conflict is, at most, highly attenuated based on the firm's prior representation of an affiliate.

Second, as to any prejudice to the parties, Lennar Corp. will not be prejudiced in any way by the firm's continued representation of the Plan Trustee in this Case.  *See Prudential*, 365 F. Supp. 2d at 1239-40 (finding that there was simply no showing of prejudice where the only concern the movant had was its "inherent discomfort" in having its counsel in an unrelated matter represent an adverse party in the lawsuit); *Great Am.*, 2008 WL 1994857, at *2 (finding there was no showing of prejudice, especially in light of the fact that the movant never shared any confidences with the firm).  On the other hand, if the firm is disqualified, the Plan Trustee will be prejudiced, as it would have to find new counsel who is unfamiliar with this Case.  *See Great Am.*, 2008 WL 1994857, at *2 (denying the motion to disqualify and stating "[w]ith respect to the second factor Defendant [] would be greatly prejudiced by the Firm's disqualification, as she would have to scramble to retain new counsel, who would be unfamiliar with the case, a mere two months before trial.").

Third, whether Berger Singerman will be less effective in its representation of Lennar Homes in the JB Ranch Matter is a non-issue.  That case has been settled and, in any event, the court granted the firm's motion to withdraw as Lennar Homes's counsel in that case.

Fourth, there is no basis to conclude that the public perception of the legal profession would be damaged if this Court does not disqualify Berger Singerman.  To the contrary, disqualification "would have the effect of encouraging diversionary tactics while diminishing public confidence in the ability of the judicial process to redress serious wrongs."  *Metra Ins. Co. v. Anclote Psychiatric Hosp., Ltd.*, 961 F. Supp 1580, 1585 (M.D. Fla. 1997).

Finally, whether the attempt to disqualify an attorney is used as a tactical device or a means of harassment, weighs against disqualification here.  *See Alexander*, 881 So. 2d at 608-09 (stating that motions for disqualification are viewed with skepticism because they are often used for tactical purposes); *Hernandez*, 2010 WL 3522210, at *1 (same); *Great Am.*, 2008 WL 1994857, at *2 (denying motion, finding the fifth factor weighed against disqualification where the movant had known of the firm's involvement in the case for nine months but waited until two months before trial to seek disqualification).  The firm has not represented Lennar Corp. in any matters since 2009, and no longer represents Lennar Homes in the JB Ranch Matter.

None of the factors under the balancing test supports disqualifying Berger Singerman.

## V.      CONCLUSION

For the reasons set forth above, Lennar Corp. and U.S. Home have failed to meet their heavy burden of showing that the Court should resort to the drastic remedy of disqualifying the Plan Trustee's choice of counsel, the Motion should be denied.

## VI.      REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), Berger Singerman respectfully requests oral argument on the Motion, including the presentation of evidence as the Court deems appropriate. Undersigned counsel estimates that approximately 1 hour should be sufficient for a non-evidentiary hearing, and 4 hours should be sufficient if the Court hears evidence.

Dated: November 30, 2012       Respectfully submitted,
      Miami, Florida

s/Richard H. Critchlow

Richard H. Critchlow (FL. Bar No. 155227)
rcritchlow@knpa.com
Elizabeth B. Honkonen (FL. Bar No. 0149403)
ehonkonen@knpa.com
KENNY NACHWALTER, P.A.
201 South Biscayne Blvd, 1100 Miami Center
Miami, Florida 33131-4327
Telephone: (305) 373-1000
Facsimile: (305) 372-1861

*Counsel for Non-Party Berger Singerman LLP*

## CERTIFICATE OF SERVICE

    **I certify** that on November 30, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

               s/Elizabeth B. Honkonen

## SERVICE LIST

Edward J. Peterson, III, Esq.
epeterson@srbp.com
STICHTER, RIEDEL, BLAIN & PROSSER, PA
110 East Madison Street, Suite 200
Tampa, FL 33602
Telephone:      (813) 229-0144
Facsimile:      (813) 229-1811
*Counsel for Plaintiff Taylor, Bean & Whitaker Mortgage Corp.*
**[VIA CM/ECF]**

Sharon L. Kegerreis, Esq.
skegerreis@bergersingerman.com
James D. Gassenheimer, Esq.
jgassenheimer@bergersingerman.com
BERGER SINGERMAN, LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
Telephone:      (305) 755-9500
Facsimile:      (305) 714-4340
*Counsel for Plaintiff Taylor Bean & Whitaker Mortgage Corp.*
**[VIA CM/ECF]**

Patrick E. Geraghty, Esq.
pat@7-litagators.com
GERAGHTY, DOUGHERTY & EDWARDS, P.A.
Post Office Box 1605
1531 Hendry Street
Ft Myers, FL 33902-1605
Telephone:      (239) 334-9500
Facsimile:      (239) 334-8930
*Counsel for Plaintiffs Federal Deposit Insurance Corporation and Taylor, Bean & Whitaker Mortgage Corp.*
**[VIA CM/ECF]**

Michael H. Delbick, Esq.
Orlando Villalba, Esq.
MORTGAGE RECOVERY LAW GROUP
700 N. Brand Blvd. Suite 830
Glendale, CA 91203
Telephone:      (818) 630-7904
Facsimile:      (818) 630-7920
*Counsel for Plaintiff Taylor, Bean & Whitaker Mortgage Corp.*
**[VIA U.S. MAIL]**

Hilarie Bass, Esq.
bassh@gtlaw.com
Adam M. Foslid, Esq.
foslida@gtlaw.com
Timothy A. Kolaya, Esq.
kolayat@gtlaw.com
GREENBERG TRAURIG PA
333 SE 2nd Avenue, Suite 4400
Miami, FL 33131
Telephone:      (305) 579-0500
Facsimile:      (305) 579-0717
*Counsel for Defendants Lennar Corporation, U.S. Home Corporation, and North American Title Company*
**[VIA CM/ECF]**

Theodore L. Tripp, Jr., Esq.
ttripp@hahnlaw.com
Justin B. Mazzara, Esq.
jmazzara@hahnlaw.com
Kevin Patrick Fularczyk, Esq.
kfularczyk@hahnlaw.com
HAHN LOESER & PARKS LLP
2532 East First Street
Fort Myers, FL 33901
Telephone:      (239) 337-6700
*Counsel for Defendant Matthew Devereaux*
**[VIA CM/ECF]**

Anthony P. Strasius, Esq.
anthony.strasius@wilsonelser.com
Rachel F. Kelman, Esq.
rachel.kelman@wilsonelser.com
WILSON, ELSER, MOSKOWITZ, EDELMAN
  & DICKER, LLP
100 SE 2nd St, Suite 3800
Miami, FL 33131
Telephone:    (305) 374-4400
Facsimile:    (305) 579-0261
*Counsel for Defendants Anthony Gizzi Real*
*Estate Appraisals, Inc. and David Sawyer*
**[VIA CM/ECF]**

Riverwalk Property Ventures, LLC
8189 Fort Hill Road
Eagle Mountain, UT 84005
**[VIA U.S. MAIL]**

David A. Wallace, Esq.
dwallace@williamsparker.com
Williams Parker Harrison, Esq.
dfernandez@williamsparker.com
DIETZ & GETZEN, P.A.
200 S. Orange Avenue
Sarasota, FL 34236
Telephone:    (941) 366-4800
Facsimile:    (941) 954-3172
*Counsel for Defendant Andrew J. Sorensen*
**[VIA CM/ECF]**

Charles M. Burnett
Ayla D. Burnett
8189 Fort Hill Road
Eagle Mountain, UT  84005
**[VIA U.S. MAIL]**

Peggy Ferguson
1312 Addiewell PL
San Jose, CA  95120-3904
**[VIA U.S. MAIL]**

Julie White
2665 E Parleys Way, Apt. 116
Salt Lake City, UT  84109-1626
**[VIA U.S. MAIL]**

Utah Exchange Group
Riverwalk Property Ventures, LLC
8189 Fort Hill Road
Eagle Mountain, UT 84005
**[VIA U.S. MAIL]**

Jennifer White
2325 Cedar Dr.
Eagle Mountain, UT  84005-4188
**[VIA U.S. MAIL]**

Kelly Hatch, individually and
Manager for Aspen Home Loans, LLC
440 Brandt Court, Apt. 10
Salt Lake City, UT 84107-2301
**[VIA U.S. MAIL]**

Aspen Home Loans, LLC
826 East State Road, Suite 150
American Fork, UT  84003
**[VIA U.S. MAIL]**

Michael Riley Moore, Sr.
5122 S. 1950 W.
Roy, UT  84067-2505
**[VIA U.S. MAIL]**

Paul Andrew Gulbronson
12885 Schalk Ct.
Woodbridge, VA  22192-6467
**[VIA U.S. MAIL]**