# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| TAYLOR, BEAN & WHITAKER MORTGAGE CORP., and FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF COLONIAL BANK, in its own capacity and as assignee of certain claims of TAYLOR, BEAN & WHITAKER MORTGAGE CORP., | Case No. 2:12-cv-595-FtM-99SPC |

      Plaintiffs,

vs.

LENNAR CORPORATION, a Delaware
Corporation; U.S. HOME CORPORATION, a
Delaware Corporation; NORTH AMERICAN
TITLE COMPANY, a Florida Corporation;
AYLA D. BURNETT, Individually;
CHARLES M. BURNETT, Individually;
PEGGY FERGUSON, Individually, JENIFER
WHITE, Individually, JULIE WHITE,
individually, UTAH EXCHANGE GROUP, an
unincorporated business association; ASPEN
HOME LOANS LLC, a Utah Limited Liability
Company; KELLY HATCH, Individually;
PAUL ANDREW GULBRONSON, Individually;
MICHAEL RILEY MOORE, SR., Individually;
RIVERWALK PROPERTY VENTURE, LLC, a
Utah Limited Liability Company;
MATTHEW DEVEREAUX, Individually;
ANDREW JAMES SORENSEN, Individually;
ANTHONY GIZZI REAL ESTATE
APPRAISAL, INC., a Florida Corporation; and
DAVID SAWYER, Individually,

      Defendants.

## DEFENDANTS LENNAR CORPORATION AND U.S. HOME CORPORATION'S REPLY TO RESPONSE IN OPPOSITION TO MOTION TO DISQUALIFY COUNSEL FOR PLAINTIFF, TAYLOR, BEAN & WHITAKER MORTGAGE CORP.

Defendants Lennar Corporation ("Lennar") and U.S. Home Corporation ("U.S. Home"), (collectively, the "Lennar Defendants") respectfully submit this Reply to Berger Singerman, LLP's ("Berger Singerman" or the "Firm") Response in Opposition [D.E. 43] (the "Response" or "Resp.") to the Lennar Defendants' Motion to Disqualify Counsel for Plaintiff, Taylor, Bean & Whitaker Mortgage Corp. ("TBW") [D.E. 18] (the "Motion to Disqualify" or "Motion").[1]

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

The paramount obligation of an attorney is the undivided duty of loyalty to his or her clients.  In their Motion, the Lennar Defendants request that the law firm of Berger Singerman be disqualified from representing the Plaintiffs in this case, because the Firm has breached this duty and placed its own interests over that of its clients, the Lennar Defendants.  In its Response, Berger Singerman tries to excuse its actions by suggesting that the Lennar Defendants are using the Motion to Disqualify in an attempt to gain an "unfair tactical advantage" in this lawsuit.  This could not be further from the truth.

Berger Singerman is prohibited under the Florida Rules of Professional Conduct from asserting fraud-based claims against the Lennar Defendants in this case because certain Lennar Defendants were current clients of the Firm at the time Berger Singerman initially took on the representation of the Plaintiffs in this lawsuit.  As further explained in the Motion, this creates a conflict of interest under Rule 4-1.7 of the Florida Rules of Professional Conduct because: (i) Berger Singerman's representation of the Plaintiffs in this case will be directly adverse to the Lennar Defendants; (ii) Berger Singerman could not possibly continue to provide adequate representation to the Lennar Defendants once it decided to pursue fraud claims against them on

---

[1] Although the Lennar Defendants' Motion was filed in a previous court at a time when Berger Singerman did not yet represent the FDIC in this lawsuit, the same rationale for disqualifying the Firm in its capacity as counsel for TBW would prohibit the Firm from asserting claims against the Lennar Defendants.  As a result, the Lennar Defendants seek to prohibit and disqualify the Firm from bringing claims against the Lennar Defendants on behalf of any plaintiff in this action, including the FDIC.

behalf of the Plaintiffs in this case; and (iii) the duty of loyalty prohibits Berger Singerman from taking action directly adverse to Lennar Homes (*e.g.*, alleging that its employees engaged in fraud), and materially limits the Firm's ability to represent the Plaintiffs in this case.

Berger Singerman's suggestions that it *technically* did not represent the Lennar Defendants at the time it began to represent the Plaintiffs in this case or, alternatively, that the Lennar Defendants waived the conflict, are misplaced.   Berger Singerman's ethical obligations to the Lennar Defendants simply cannot be discarded so lightly.   In the Response, Berger Singerman does not dispute that it:

- represented each of the Lennar Defendants at various times over the past five years;

- was counsel of record for Lennar Homes, LLC ("Lennar Homes")--Lennar's wholly-owned subsidiary--at the time it substituted in as counsel for the Plaintiffs in this case;

- never discussed with the Lennar Defendants when it presented them engagement letters the possibility that the Firm might represent a party directly adverse to the Lennar Defendants in a case alleging that the Lennar Defendants engaged in fraud;

- is pursuing claims against the Lennar Defendants based on allegations that the Lennar Defendants, including Lennar Homes' (Berger Singerman's then current client) employees, committed fraud; and

- took on the representation of the Plaintiffs in this case--over the objection of the Lennar Defendants--because it believed that this representation presented a "far more lucrative engagement" for the Firm than the continued representation of the Lennar Defendants.

Rather, Berger Singerman argues that: (i) the Lennar Defendants waived the right to bring the Motion to Disqualify by waiting too long to file the motion; (ii) the Firm did not represent the Lennar Defendants at the time it appeared in this case on behalf of the Plaintiffs, despite its then-current representation of Lennar Homes; (iii) the Firm should be able to represent the Plaintiffs in this case based on a broad, general prospective waiver provision from a five-year old engagement letter; (iv) the Firm is permitted to make fraud allegations against the employees of

2

its current client (Lennar Homes), because those individuals are being sued in their capacity as employees for various affiliates of Lennar Homes; and (v) even if the Firm is in violation of its ethical obligations to the Lennar Defendants, the Court has discretion in determining whether to disqualify Berger Singerman.  Each of these arguments fail.

Indeed, in his attached report, Professor Lawrence J. Fox[2] opines that Berger Singerman violated the "hot potato rule" when it improperly dropped Lennar Corp. in the hopes of undertaking a "more profitable" representation directly adverse to Lennar Corp. in this case. [Fox Report, at pp. 5-7.]  Accordingly, Professor Fox explains, this Motion is governed by Rule 4-1.7 of the Florida Rules of Professional Conduct, and not the former client rule, 4-1.9, as suggested by Berger Singerman.  [*Id.*, at p. 6.]  Additionally, in Professor Fox's opinion, the claims asserted here against the Lennar Defendants are of such a nature that they create a nonwaiveable conflict.  [*Id.*, at pp. 8 - 11.]  In any event, as Professor Fox explains, the boilerplate waiver in Berger Singerman's engagement letters did not provide the Lennar Defendants with sufficient information to allow those parties to give the requisite "informed consent" for the Firm to take on this directly adverse representation.  [*Id.*, at pp. 11 - 16.]

## II.    LEGAL ARGUMENT

### A.    The Lennar Defendants Filed The Motion To Disqualify Promptly Upon Learning That Berger Singerman Would be Representing Plaintiffs.

#### 1.    Berger Singerman was not in a position to assert fraud claims against the Lennar Defendants until August 2012.

In its Response, Berger Singerman suggests that the Lennar Defendants waived their right to seek disqualification of Berger Singerman because of delay in bringing the Motion to Disqualify.  This argument is without merit, however, as it presents an inaccurate description of

---

[2] Professor Fox, one of the leading legal ethics scholars in the U.S, is, among other things, the Crawford Lecturer at Yale Law School, where he teaches professional responsibility and is the founder and the supervising lawyer for the Ethics Bureau at Yale.  Professor Fox's expert report ("Fox Report") is attached hereto as Exhibit "1."

the Firm's involvement in this litigation.   Indeed, until Berger Singerman made clear to the Lennar Defendants that it would be representing the Plaintiffs in this litigation--and asserting claims directly against the Lennar Defendants--no objectionable conflict of interest existed.

A lawyer is not prohibited from representing two clients in unrelated matters, when those clients happen to be adverse to each other in another matter in which the lawyer is not involved. *See* Fla. R. Prof. Conduct 4-1.7(a).   The ethical conflict arises once (i) the lawyer's representation of one client is *directly adverse to the other client*, or (ii) there is a substantial risk that the representation of one client will be materially limited by the lawyer's responsibilities to the other. *Id*.   In this case, it is "direct adversity" that triggered a conflict.

Berger Singerman states in its Response, "Lennar Corp.'s suggestion that it was unaware of Berger Singerman's representation until July 20, 2012 is incorrect." [Resp., at p. 23].   But that purposefully vague statement begs the question: the representation of whom?   Berger Singerman recites the various roles in which it was involved in *other* litigation involving the TBW bankruptcy.   For example, the Firm represented the "Official Committee of Unsecured Creditors" as of September 2009, and the Plan Trustee as of August 2011.   [Resp., at p. 23]. Neither of these roles, however, had any direct connection to this litigation, and the Lennar Defendants are not parties to or otherwise involved in the TBW bankruptcy.

Berger Singerman makes much ado of its notice of appearance in this case on behalf of "Neil Luria, as Plan Trustee of Taylor Bean & Whitaker Corp. Plan Trust" on May 24, 2012. However, no ethical conflict existed at that point.   Berger Singerman was not representing TBW, the only named Plaintiff in the case at that time, but rather was appearing in some unknown capacity on behalf of the "Plan Trustee."   Because the Plan Trustee was not, at that time, a plaintiff asserting claims against the Lennar Defendants, Berger Singerman had not yet taken

action *directly adverse* to the interests of the Lennar Defendants.

Additionally, this case was essentially dormant for nearly three years prior to Berger Singerman's appearance. The previous record activity of any substance in the case occurred on August 20, 2009, when discovery responses were filed. [D.E. 3-2, at p. 6.] When Berger Singerman initially noticed its appearance for the Plan Trustee, it was unclear whether Plaintiffs intended to revive this case. When counsel for the Lennar Defendants approached Berger Singerman at that time to discuss what the Firm's role would be in the litigation, Berger Singerman responded that "the Plan Trustee is researching and analyzing the facts surrounding the Lennar litigation in order to determine the appropriate approach to this litigation as a fiduciary for the TBW Plan Trust" and requested "an additional 45 days to make this determination." [Second Declaration of Marcie R. Getelman ("2nd Getelman Dec."), attached as Exhibit 2, at ¶ 4.] No additional substantive actions were taken until August 14, 2012, when Berger Singerman filed a Motion to Amend and to substitute the Plan Trustee as plaintiff [D.E. 7-10], that Berger Singerman created a conflict (*i.e.*, by beginning to represent a party *directly adverse* to the Lennar Defendants). [2nd Getelman Dec., at ¶ 4.]

**2.     The Lennar Defendants filed the Motion to Disqualify promptly once it was clear that Berger Singerman would be representing a party that was directly adverse to and asserting fraud claims against the Lennar Defendants.**

It was in an email dated July 20, 2012, that Berger Singerman first informed the Lennar Defendants that they would be representing TBW and, possibly, the FDIC, and would be the attorneys responsible for prosecuting these parties' claims against the Lennar Defendants. [Motion, at p. 6]. Upon being made aware of this, the Lennar Defendants *immediately* brought this issue to the attention of Berger Singerman. [*Id.*, at p. 8] Over the course of the next several weeks, the Lennar Defendants and Berger Singerman had numerous communications in an

attempt to resolve this issue.   [*Id.*].   Once it became clear that Berger Singerman would not voluntarily extricate itself from this conflict, the Lennar Defendants began to prepare the Motion to Disqualify, which they filed on September 20, 2012.

The facts simply do not support Berger Singerman's suggestion that the Motion to Disqualify was not timely.   Upon learning of the grounds for disqualification, the Lennar Defendants immediately voiced their objection to Berger Singerman, and attempted to resolve this sensitive ethical issue outside of court.   Once it became apparent that the issue could not be resolved between the parties, the Lennar Defendants filed the Motion to Disqualify.   This entire process was completed in two months.   *See Shaw v. Broad and Cassel*, Case No. 11-23689-CIV, 2012 WL 315050, at *2 (S.D. Fla. Feb. 1, 2012) (no waiver where motion to disqualify filed five months after learning of potential disqualifying conflict and two months after conflict became clear); *Snyderburn v. Bantock*, 625 So. 2d 7, 13 (Fla. 5th DCA 1993) (same).

**B.     The Lennar Defendants were Berger Singerman's Current Client at the Time Berger Singerman Created this Conflict of Interest.**

At the time the Lennar Defendants filed this Motion, Berger Singerman was counsel of record for Lennar Homes in a pending state court litigation matter.   [Motion, at p. 3].   In the Motion, the Lennar Defendants explain that Lennar Corp., the parent company of Lennar Homes, remains a current client of Berger Singerman by virtue of Lennar Corp.'s oversight, involvement, and interactions with outside counsel--such as Berger Singerman--in connection with litigation for its affiliates, including Lennar Homes.   [Motion, at pp. 9-12].   Accordingly, Berger Singerman is not permitted to represent the Plaintiffs in this case because that representation is directly adverse to its current client, Lennar Corp.

6

    **1.**    **Berger Singerman is not permitted to eliminate this conflict of interest by dropping its representation of Lennar Homes like a "hot potato."**

Berger Singerman suggests in its Response that Lennar Homes is no longer a "current client," and, therefore, the Firm's ethical dilemma of suing a current client is not at issue. This argument is wrong, both legally and factually. While the Lennar Defendants do not dispute that Berger Singerman withdrew its representation as counsel for Lennar Homes in a state court action that was nearing resolution, the manner in which these events occurred is problematic.

When the Lennar Defendants filed the Motion to Disqualify, Berger Singerman was still the record attorneys for Lennar Homes in the case of *Regions Bank v. JB Ranch Associates, RLLP*, Case No. 42-2009-CA-005830 (5th Jud. Cir., Marion County, Fla.) (the "JB Ranch Foreclosure"). Berger Singerman's motion to withdraw was granted in that case on November 8, 2012--seven weeks after the Lennar Defendants filed the Motion to Disqualify. [2nd Getelman Dec., at ¶ 5.] However, even today, Berger Singerman remains counsel of record for Lennar Homes in a related matter.[3]

Even if that were not the case, Berger Singerman's withdrawal from the J.B. Ranch Foreclosure was improper, because an attorney's duty of undivided loyalty continues even when the attorney withdraws from its representation of the client prior to the court's ruling on a motion to disqualify. *See Harte Biltmore Ltd. v. First Pennsylvania Bank, N.A.*, 655 F. Supp. 419, 421 (S.D. Fla. 1987). Indeed, a current client "has a right to expect that his attorney would 'accept no retainer to do anything that might be adverse to his client's interests.'" *Id*. If that were not the case, "the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client." *Id*.

---

[3] *JB Ranch Associates, RLLP v. Lennar Homes, LLC*, Case No. 42-2008-CA-001924 (5th Jud. Cir., Marion County, Fla.) (the "Related J.B. Ranch Litigation"). Although Berger Singerman filed a motion to withdraw in that case as well, that motion has not been heard or ruled upon by that court. [2nd Getelman Dec., at ¶ 6.]

This rule, known as the "hot potato" doctrine, "prevent[s] attorneys from dropping one client like a 'hot potato' to avoid a conflict with another, more remunerative client." *Santacroce v. Neff*, 134 F. Supp. 2d 366, 367 (D. N.J. 2001).   As explained by the Lennar Defendants' Expert, Professor Fox, there are "few courses of conduct that could bring greater disapproval to the profession and dismay to clients than the act of a lawyer choosing to abandon a client mid-stream, a client to whom that lawyer owed full loyalty, so that the lawyer can be 'free' to undertake a more lucrative engagement." [Fox Report, at p. 6.]   But that is exactly what Berger Singerman has attempted to do here.

Berger Singerman does not dispute it told the Lennar Defendants that its representation of TBW in this case would be a far more lucrative engagement for the Firm than its continued representation of Lennar Homes in the "substantially dormant" J.B. Ranch Foreclosure.   Upon hearing this from its trusted attorneys, the Lennar Defendants objected to Berger Singerman taking on this representation.   In the end, however, Berger Singerman proceeded to "dump" the Lennar Defendants in favor of bringing these claims against them.   This decision--to place Berger Singerman's financial gain over its duty of loyalty to its clients--is in direct conflict with the Firm's ethical obligations.   *See Harrison v. Fisons Corp.*, 819 F. Supp. 1039, 1041 (M.D. Fla. 1993) ("A lawyer may not evade ethical responsibilities by choosing to jettison a client whose continuing representation becomes awkward. Allowing lawyers to pick the more attractive representation would denigrate the fundamental concept of client loyalty.").

While there are unquestionably circumstances under which a lawyer is permitted to withdraw from its representation of a client, the "hot potato" doctrine prevents a unilateral withdrawal under circumstances where it is clear that it is the lawyer's own interests, rather than something directly related to the representation of its current client, that leads to the withdrawal.

8

In determining whether withdrawal is proper, the Court should consider the following:

> When a lawyer or law firm suddenly finds itself in a situation of simultaneously representing clients who either are presently adverse or are on the verge of becoming adverse, it may not simply drop one client like a "hot potato" in order to treat it as though it were a former client for the purpose of resolving a conflict of interest…. A lawyer's withdrawal … only renders the client a former client when: (1) it occurs at a time when the lawyer and the client had contemplated the end of the representation; and (2) the lawyer's primary motivation for terminating the relationship was not his desire to represent the new client.

*ValuePart, Inc. v. Clements*, No. 06 C 2709, 2006 WL 2252541, at *2 (N.D. Ill. Aug. 2, 2006).

Berger Singerman cannot establish either factor in favor of withdrawal.  Lennar Homes strenuously objected to Berger Singerman's improper withdrawal in the J.B. Ranch Foreclosure. [Motion, at p. 8].  Additionally, the Firm does not even attempt to suggest an alternative justification for its decision to withdraw from representing Lennar Homes in that matter.  At bottom, Berger Singerman recognized a potentially more lucrative engagement for the Firm. [*Id.*].  And, when the Lennar Defendants objected to the Firm's representation of the Plaintiffs, Berger Singerman decided that its continued representation of Lennar Homes in the J.B. Ranch Foreclosure posed an obstacle to that more lucrative engagement.

### 2.    The Firm's duty of undivided loyalty is no less important simply because the J.B. Ranch Foreclosure was a small matter and nearing resolution.

The fact that the J.B. Ranch Foreclosure was "substantially dormant" or close to resolution has no impact on the impropriety of Berger Singerman's unilateral withdrawal from that case.  The fact of the matter is that a client is a client, regardless of whether the firm bills that client for one hour or thousands of hours.  *See International Business Machines Corp. v. Levin*, 579 F. 2d 271, 281 (3rd Circuit 1978) ("Although CBM had no specific assignment from IBM on hand on the day the antitrust complaint was filed … the pattern of repeated retainers … supports the finding of a continuous relationship.").  Therefore, the fact that Berger Singerman

9

charged only 11.1 hours to the J.B. Ranch Foreclosure is of no importance to this Motion.[4]

In its Response, Berger Singerman attempts to compare the present circumstances to the case of *McKesson Solutions, Inc. v. Duane Morris LLP*, No. 2006-cv-121110 (Super Ct. Fulton Co. Ga. Mar. 6, 2007) (attached to Response as D.E. 43-12). In *McKesson*, the court issued an injunction, disqualifying a law firm based on a conflict of interest, and then vacated as moot its injunction on grounds that the firm later withdrew from representing the client in the prior bankruptcy matter. *Id.*, at *9. However, Berger Singerman fails to accurately explain why the *McKesson* court relied so heavily on the firm's withdrawal in the prior bankruptcy matter in support of its vacatur of the disqualification order. The court emphasized that, *first*, the prior bankruptcy matter was completed, and, *second*, the law firm then withdrew, without objection, from its representation of the client in that bankruptcy mater. *Id.* at *6-*7. The *McKesson* court went on to explain that the hot potato doctrine could not apply to that case because the client did not object to the law firm's withdrawal in the prior bankruptcy matter. Therefore, the client was a "former client," and no grounds existed under the former client rule for disqualification.

Here, the order of events is markedly different. First, the Lennar Defendants filed the Motion to Disqualify. Second, Berger Singerman then withdrew from its representation of Lennar Homes in the JB Ranch Foreclosure, over the objection of Lennar Homes and the Lennar Defendants. [2nd Getelman Dec., at ¶ 5.] That fact alone makes Berger Singerman's unilateral withdrawal improper. *ValuePart,* 2006 WL 2252541, at *2. But Berger Singerman's attempt to compare this situation to *McKesson* is even more distinguishable because the JB Ranch

---

[4] Berger Singerman was paid over $136,249.31 by the Lennar Defendants for its representation of Lennar Homes in the Related J.B. Ranch Litigation. Therefore, although that one particular litigation matter may have been relatively small, the entire related representation involved substantial work by the Firm. [2nd Getelman Dec., at ¶ 7.]

Foreclosure matter has not yet been fully resolved[5] and the Firm is still Lennar Homes' counsel of record in the Related J.B. Ranch Litigation, which remains pending.

This is the ultimate "hot potato" scenario--Berger Singerman unilaterally withdrew from its representation of Lennar Homes in the J.B. Ranch Foreclosure, over Lennar Homes' objection, while that case remained pending.  This is not permitted under Florida's ethical rules.

> **3.      The Facts do not support Berger Singerman's suggestion that it limited its representation under the engagement letters to Lennar Corp.**

Berger Singerman argues in the Response that it limited its engagement of the Lennar Defendants to individual matters for specific entities pursuant to a series of engagement letters. In so doing, it suggests that it is entitled to rely upon language from those engagement letters that purports to limit the Firm's representation to only the client specifically listed on the engagement letters.  This argument fails, however, because Berger Singerman did not conduct its law practice or define its relationship with the Lennar Defendants with such precision.

For example, of the 17 matters on which Berger Singerman represented Lennar Corp. and its various affiliates, several were for matters directly involving Lennar Homes and U.S. Home. [Motion, at p. 3].  However, of the five executed engagement letters that the Firm produced, none are signed by Lennar Homes or U.S. Home.  All letters are addressed to and signed by Lennar Corp.  Therefore, for the majority of these matters, the Firm had no engagement letter and took no steps to define or limit its representation to any particular client(s).

Even more troublesome for Berger Singerman's position, is that one of the executed engagement letters (which, like the others, was addressed to and signed by Lennar Corp.) clearly involves Lennar Homes.  [D.E. 43-3, at p. 5].  The "Due West LLC" matter involves a dispute in

---

[5] Although a stipulation for entry of a final judgment was filed in the JB Ranch Foreclosure, the foreclosure sale is currently set for mid-January 2013.

which Lennar Homes filed a lawsuit against Due West LLC,[6] and Berger Singerman later appeared in a corresponding bankruptcy case as counsel for Lennar Homes.[7]   For Berger Singerman to suggest now that its engagement letters "treated Lennar Corp. and it subsidiaries as separate and distinct entities and made clear that the firm did not represent Lennar Corp's subsidiaries absent express agreement to do so" completely disregards the facts surrounding the Firm's representation of Lennar.  As noted by Professor Fox, Berger Singerman's own writings and conduct defeat its empty argument on this point.  [Fox Report, at pp. 19-22.]

While it may have been possible for Berger Singerman to limit its representation to individual Lennar entities pursuant to its engagement letters, in practice it did not.  Rather, the Firm entered into the engagements through Lennar Corp., regardless of which Lennar entity was the active client.  The Court need look no further than the Due West, LLC matter to confirm this. Accordingly, the Lennar Defendants have provided ample evidence that, for purposes of establishing an attorney-client relationship, Lennar Corp. was the alter ego of its affiliates.[8]

Berger Singerman also goes to great lengths to distinguish *Estate of Jones* from the present case.  [Resp. at pp. 12-15].  It suggests that the alter ego relationship between the parent and subsidiary in that case was based solely on the terms of the engagement letter.  While the engagement letter in that case supported the broad representation, the court describes in detail facts behind the engagement that independently established that the parent was also a client,

---

[6] *Lennar Homes, LLC v. Due West, LLC*, Case No. 2007CA003771 (18th Jud. Cir., Seminole County, Fla.).
[7] *In re Due West, LLC*, 6:08-bk-01574-ABB (Bank. M.D. Fla.).  [2nd Getelman Dec., at ¶ 8.]  The Attorney List for this case is attached to the 2nd Getelman Dec. as Exhibit A, and Berger Singerman's Notice of Appearance for Lennar Homes is attached as Exhibit B.
[8] Berger Singerman provides citations to cases holding, generally, that parents and subsidiaries are separate legal entities and suggests that, if the Lennar Corp. and its affiliates are alter egos for the purpose of creating an attorney-client relationship, they must be alter egos for all purposes, including liability.  [Resp., at p. 12].  As explained more fully in the Motion, however, the analysis for determining whether entities are the alter ego of one another for purposes of *liability* is a completely separate inquiry from the analysis for determining whether an attorney-client relationship extends to related entities.  *See Estate of Jones ex rel. Gay v. Beverly Health and Rehabilitation Services, Inc.*, 68 F. Supp. 2d 1304, 1310 n.5 (N.D. Fla. 1999).

12

despite the law firm's argument that representation was limited to the affiliate.  *Estate of Jones v.*

*Beverly Helath & Rehabilitation Servs., Inc.*, 68 F. Supp. 2d 1304, 1309-10 (N.D. Fla. 1999).

As further described in the Motion, at pp. 11-12, each factor that supported the finding of

an attorney-client relationship with the parent in *Jones* is also present here.[9]  However, Berger

Singerman avoids this analysis in its Response and focuses nearly two and a half pages of its

argument on issues related to the use of information to the disadvantage of a former client.

[Resp., at pp. 13-15].  That, of course, is only relevant in situations where the adverse party is a

*former* client.  This situation, by contrast, is governed by the current client rule, 4-1.7 of the

Florida Rules of Professional Conduct, which prohibits an attorney from representing one client

in a matter directly adverse to another current client.[10]

> ### 4.      The Lennar Defendants have standing to challenge Berger Singerman's conflict of interest, regardless of the Court's determination on the issue of whether Lennar Corp. is a current client.

Berger Singerman also argues in its Response that Lennar Corp. and U.S. Home do not

have standing to bring the Motion.  This argument is based on the misplaced premise that Lennar

Corp. was not a current client at the time Berger Singerman took on the representation of TBW

in this case.   Nevertheless, many courts have concluded that the obligation to ensure that

professional ethics are followed permits counsel to raise and challenge unethical procedures on

the part of opposing lawyers, regardless of such standing arguments.  *In re Congoleum Corp.*,

---

[9]  Berger Singerman makes light of the fact that it received Lennar Corp.'s Outside Legal Counsel Policies, and suggests that those guidelines were solely for the firm's representation of Lennar Corp.  [Resp., at p. 15].  However, those guidelines, by their terms, clearly govern Berger Singerman's "[l]egal services for Lennar Corporation or any of its subsidiaries, affiliates, or divisions (collectively, the 'Company' or 'Lennar')."  Without getting into specifics, these guidelines provide Lennar's outside counsel with thoughts and strategies regarding a number of litigation issues, including discovery, motion practice, and settlement.  If the Court believes it would be helpful or necessary for the Court's resolution of this Motion, the Lennar Defendants would be willing to file these guidelines under seal.

[10]  Berger Singerman dedicates a substantial portion of its Response to arguments pertaining to Rule 4-1.9 of the Florida Rules of Professional Conduct, which governs conflicts involving "former clients."  The Lennar Defendants did not even refer to that rule in the Motion to Disqualify and take no position at this point regarding whether these circumstances would constitute a conflict under that rule.

426 F. 3d 675, 686 (3d Cir. 2005); *Kevlik v. Goldstein*, 724 F. 2d 844, 848 (1st Cir. 1984); *In re:*

*Corn Derivatives Antitrust Litigation*, 748 F. 2d 157, 160 (3d Cir.1984).   Accordingly, the

Lennar Defendants have standing to raise these arguments, regardless of the Court's ultimate

ruling on whether Lennar Corp. was the Firm's current client.

   **C.     The Prospective Conflict Waiver in Berger Singerman's Standard Engagement
            Letter does Not Constitute the Lennar Defendant's Informed Consent.**

   Under Florida law, a conflict waiver is enforceable only where (i) the law firm

reasonably believes that it will be able to provide competent and diligent representation to each

affected client and (ii) each affected client gives *informed consent*, confirmed in writing or

clearly stated on the record.   Rule 4-1.7, Fla. Rules of Prof. Cond.   In the Motion, the Lennar

Defendants explain that allegations of fraud against a client are of such a nature that Berger

Singerman cannot ethically seek a waiver to pursue those claims on behalf of the Plaintiffs in this

case.   [Motion, at pp. 13-16].   And, in any event, a boilerplate engagement letter that purports to

waive prospective conflicts, without more, does not constitute the Lennar Defendants' informed

consent to such a conflict in this directly adverse matter alleging fraud.   [Motion at pp. 16-20].

   **1.     Courts look past the language of a conflict waiver to determine whether the
            client gave "truly informed consent" to a conflict of interest.**

   Berger Singerman argues that the general, prospective conflict waiver language in its

engagement letters allows the Firm to take on representation adverse to the Lennar Defendants in

any situation, merely because the Lennar Defendants are "knowledgeable and sophisticated"

clients.[11]   While the Firm acknowledges that consent is critical under Rule 4-1.7, it fails to

---

[11] Berger Singerman fails to respond to the argument that, through its own actions, the Firm itself has recognized
that the broad waiver language is not sufficient in and of itself to allow the Firm to take on representation adverse to
the Lennar Defendants.   Indeed, when faced with prior conflicts, Berger Singerman approached the Lennar
Defendants and expressly sought their consent to a "Request for a Waiver of Conflict of Interest."   [Motion, at p. 6].
If the language in the engagement letter alone was sufficient to allow Berger Singerman to take on such
representations, there would have been no need for the Firm to request consent when conflicts arose.   In any event,

14

appreciate that consent is not valid unless that consent is truly *informed*.

In the Response, there is no suggestion that Berger Singerman ever discussed with Lennar Corp. the types of matters for which the Firm believed it was obtaining a conflict waiver. It simply suggests that the Firm "required" that the waiver provisions "be included in the Lennar Cop. engagement letters." [D.E. 43-2, at ¶ 5]. In fact, Berger Singerman acknowledges that the engagement letters were signed "without any further questions, comments, or discussion about any of the terms," including the prospective conflict waiver language. [Resp., at p. 4].

To determine whether Lennar Corp. "gave truly informed consent," the Court "must look beyond the words in [the] waiver provision." *Celgene Corp. v. KV Pharm. Co.*, 07-4819SDW, 2008 WL 2937415, at *5 (D. N.J. July 29, 2008). In *Celegne*, the client was a sophisticated multi-national company with billions of dollars in annual sales and the chief counsel signed the engagement letter that contained a conflict waiver. *Id.*, at *2. However, much like here, the law firm never had a specific discussion with the client regarding the types of cases in which the law firm might be adverse to the client. *Id.*, at *8. Ultimately, the *Celegne* court refused to enforce the waiver because the generality of the waiver, together with the law firm's failure to provide any consultation to the client regarding the waiver, did not amount to informed consent. *Id.*

The *Celgene* court cited an Opinion from the New Jersey Supreme Court's Advisory Committee on Professional Ethics, which acknowledged, as many states do, that "the adequacy of the waiver, depends on the facts of the case, including, significantly, the sophistication of the parties." *Id.*, at *12. However, merely taking into account the sophistication of a client does not mean that the law firm "is excused from the obligation to obtain informed consent." *Id.*

---

this prior conduct operates as a waiver of Berger Singerman's right to rely upon the general conflict waiver. *PNC Bank v. Branch Banking & Trust Co.*, 704 F. Supp. 2d 1229, 1239 (M.D. Fla. 2010), *aff'd* 412 Fed. Appx. 246 (11th Cir. 2011) (waiver established through "conduct that clearly leads a party to believe that a right has been waived"). *See also* Fox Report, at p. 16.

Additionally, as Professor Fox notes, it is *Berger Singerman*, as the law firm seeking a waiver, that is obligated to provide sufficient information to its client to establish informed consent. [Fox Report, at p. 16.]   It is not, as Berger Singerman suggests, Lennar's duty to probe its attorneys in an attempt to receive information necessary to evaluate the potential conflicts that may arise.

The sophistication of Lennar Corp. does not excuse Berger Singerman from obtaining "truly informed consent."   Indeed, had the Lennar Defendants known that Berger Singerman's engagement letter was intended to allow the Firm to assert claims of fraud against any of the Lennar Defendants, their related entities, or their employees, they would simply not have agreed to those terms.   [Motion, at pp. 5-6.]   As Professor Fox notes, no client would agree to those terms, provided they truly understood what the law firm was requesting.   [Fox Report, at p. 15.]

### 2. Claims of fraud against a current client necessarily call into question the character of that client and, therefore, cannot be waived.

The Response conflates two separate and distinct issues that bear on whether Berger Singerman obtained informed consent from Lennar Corp. through the conflict waiver.   While the sophistication of a client has some bearing on the amount of disclosure and explanation a law firm must provide regarding a prospective conflict waiver, lawsuits alleging fraud against a client necessarily call into question the character of the client and, therefore, are likely to present a conflict that cannot be waived.

In its discussion of D.C. Bar Opinion 309, Berger Singerman argues, "[w]hereas Opinion 309 recognizes that an unsophisticated client might not appreciate that the waiver includes future allegations of fraud, the same concerns do not apply to sophisticated clients, especially those represented by counsel." [Resp., at p. 19].   Berger Singerman implies that these two issues are intertwined.   However, these are two distinct points in the opinion, and the D.C. Bar clearly

16

suggests that allegations of fraud must be considered differently, regardless of whether the client is sophisticated or not.[12]   *See also* Comment, Rule 4-1.7, Fla. R. Prof. Cond. ("a suit charging fraud entails conflict to a degree not involved in" an ordinary suit) (emphasis added).

Further to that point, the Response does not recognize the explicit analysis of how fraud claims against a client must be analyzed differently, from *General Cigar Holdings, Inc. v. Altadis, S.A.*, 144 F. Supp. 2d 1334, 1340 (S.D. Fla. 2001) and *Fisons Corp. v. Atochem North America, Inc.*, No. 90 Civ. 1080 (JMC), 1990 WL 180551 (S.D. N.Y. Nov. 14, 1990).   Berger Singerman suggests that *General Cigar* involved allegations of potentially felonious action and argues that those claims are no different from allegations of fraud.   [Resp., at p. 21].   However, the court in *General Cigar* rejected that exact argument, concluding that the allegations in that case, unlike fraud, "relate[d] solely to the trademarks at issue and [did] not implicate [the client's] character the way an allegation of fraud would."   *Id.* at 1340-41.   Similarly, in *Fisons*, the court recognized that the prior client--through other counsel--was asserting fraud claims against the firm's new client, and, therefore, there was no concern of the law firm having to implicate the character of a firm client.   *Fisons*, 1990 WL 180551, at *7.   Here, by contrast, Berger Singerman has created a non-waiveable "atmosphere of betrayal and distrust" by alleging that its own clients, the Lennar Defendants, engaged in a fraud.   [Fox Report, at pp. 9-10.]

### D.   By Alleging that Lennar Homes' Employees Committed Fraud, Berger Singerman is Impermissibly Attacking the Character of its Client's Employees.

Pursuant to Rule 4-1.7(a) of the Florida Rules of Professional Conduct, Berger Singerman is prohibited from representing the Plaintiffs in this matter if that representation is

---

[12] D.C. Bar Ethical Opinion 309 ("Finally, any decision to act on the basis of an advance waiver should be informed by the lawyer's reasoned judgment. For example, a prudent lawyer ordinarily will not rely upon an advance waiver where the adversity will involve allegations of fraud against the other client or is a litigation in which the existence or fundamental health of the other client is at stake.").

directly adverse to a current client, or if the firm is materially limited by its duties to its current client.  As explained more fully in the Motion to Disqualify, Berger Singerman has alleged that current and former employees of its current client, Lennar Homes, were active participants in a mortgage fraud scheme.  [Motion, at pp. 22-24.]  As a result, Berger Singerman has created an ethical conflict because it is attacking the character of the employees of its client, Lennar Homes. Berger Singerman misses the mark on this point in its Response for two reasons.

First, Berger Singerman suggests that it is not asserting claims directly against Lennar Homes in this case and, therefore, no direct conflict exists.  This argument fails, however, because "direct adversity" is not limited to a direct litigation matter against a named client.[13]  It includes situations, like here, where Berger Singerman is alleging that Lennar Homes' employees conspired to defraud TBW.  Because this lawsuit necessarily "reflect[s] unflatteringly on its business reputation for astuteness-this representation will be directly adverse to [Lennar Homes]."  *Avacus Partners v. Brian*, 16 Del. J. Corp. L. 247, 254 (1990).  In addition, Berger Singerman has a material limitation on its ability to represent Plaintiffs and Lennar Homes, because the Firm cannot possibly reconcile its competing duty to Plaintiffs to vigorously prosecute these claims (by attacking the character and reputation of Lennar Homes and its employees), with its continuing, undivided duty of loyalty to Lennar Homes.

Second, Berger Singerman argues that the Lennar Homes employees are being sued for actions taken on behalf of other Lennar entities (namely, Lennar Corp. and U.S. Home), and not Lennar Homes.  Therefore, Berger Singerman submits, these allegations do not impact Lennar Homes.  This argument is not supported under Florida law or common sense, for that matter.

---

[13] *See The Florida Bar v. Herman*, 8 So. 3d 1100, 1104 (Fla. 2009) ("There is nothing in the language of the rule that restricts its application to directly adverse interests in the context of litigation between the two clients involved . . .").  Although the *Herman* case involved a previous version of Rule 4-1.7, this conclusion applies equally here.

The Firm cannot disconnect its allegations that Lennar Homes' employees engaged in fraudulent and dishonest conduct by simply stating that those actions were taken on behalf of other entities. Stated differently, a lawyer cannot tell its client that the client's employees are dishonest people and of questionable character, and then distance the current client from those allegations by suggesting that the lawyer's opinion is based solely on actions those employees took while employed by others.   Over the course of this litigation, Berger Singerman--as an advocate for Plaintiffs--would likely seek to obtain "documents from, depose, or cross-examine" these Lennar Homes employees.   *Avacus Partners,* 16 Del. J. Corp. L. at 254.   Through this process, Berger Singerman's goal would necessarily be to discredit these employees and prove that they were involved in a alleged conspiracy to defraud TBW.   "That this course of conduct is inconsistent with an attorney's duty of loyalty would seem apparent."   *Id.*

**E.**   **If the Court Concludes that a Conflict Exists, and has Not been Waived, Disqualification is Warranted Given the Circumstances.**

In a last plea for the Court's permission for it to continue with this "more lucrative engagement," Berger Singerman argues that disqualification is not necessary even if the Firm faces a "technical" conflict of interest.   [Response, at p. 29].   Although the Lennar Defendants do not disagree with that point, generally, the circumstances of this conflict *require* disqualification. *See Prudential Ins. Co. of Am. v. Anodyne, Inc.*, 365 F. Supp. 2d 1232 (S.D. Fla. 2005).

Indeed, all of the factors from *Prudential* weigh in favor of disqualification in this case. First, the nature of this conflict is similar to the conflict that existed in *Prudential*.  *Id*. at 1236. This is not a technical conflict, but rather the Firm is attempting to represent one client in a matter directly adverse to another current client.   This is a significant ethical conflict involving the paramount duty of a lawyer's undivided loyalty to a client.  *Id*. at 1238.

Second, the relative prejudice to the parties of a disqualification order in this case is

negligible.  *Id.*  While Berger Singerman boasts that the Plaintiffs are presumptively entitled to "counsel of his choice," Berger Singerman *was not* the counsel of their choice for nearly three years.  Plaintiffs chose other counsel to represent them in this matter from August 2008, when the case was filed, until just a few months ago, in July or August of 2012.  Other than filing an Amended Complaint--which substituted the Plan Trustee in place of TBW as Plaintiff and added the Federal Deposit Insurance Company as a plaintiff, but did not make other material modifications--no significant work has occurred since Berger Singerman appeared in this case.[14]

Finally, the manner in which this conflict of interest arose, and Berger Singerman's actions in attempting to resolve it, weigh heavily in favor of disqualification.  *Id.* at 1236.  When this conflict initially came to the attention of the Lennar Defendants, they approached Berger Singerman and objected.   Berger Singerman's response was not to withdraw from its involvement in this case.  Rather, at a time when it knew that this Motion was pending, Berger Singerman ran to the JB Ranch Foreclosure and sought to withdraw from it representation of Lennar Homes.  [Motion, at p. 8].  Additionally, Berger Singerman was not shy in making its intentions known that it wanted to drop its ongoing attorney-client relationship with the Lennar Defendants like a "hot potato," because the opportunity to represent the Plaintiffs in this case presented a "more lucrative" opportunity.  [*Id.*].  This conduct should not be permitted.

## CONCLUSION

For the foregoing reasons, Defendants Lennar Corporation and U.S. Home Corporation respectfully request that this Court enter an Order granting their Motion to Disqualify.

---

[14] Additionally, disqualification of Berger Singerman in this particular litigation has no impact on the Firm's ability to continue to represent the Plan Trustee and Committee of Unsecured Creditors in the TBW bankruptcy.  It simply means that Berger Singerman may not represent a party in an action directly adverse to current clients of the Firm.

Respectfully submitted,

**Greenberg Traurig P.A.**
333 Avenue of the America (S.E. 2nd Avenue)
Suite 4400
Miami, Florida 33131
Telephone:  (305) 579-0500
Facsimile:  (305) 579-0717

Courthouse Plaza
625 East Twiggs Street, Suite 100
Tampa, Florida 33602
Telephone:  (813) 318-5700
Facsimile:  (813) 318-5900

By:  /s Hilarie Bass
      HILARIE BASS
      Florida Bar No.: 334323
      bassh@gtlaw.com
      GREGORY W. KEHOE
      Florida Bar No. 486140
      kehoeg@gtlaw.com
      ADAM M. FOSLID
      Florida Bar No. 682284
      foslida@gtlaw.com
      TIMOTHY A. KOLAYA
      Florida Bar No.: 056140
      kolayat@gtlaw.com

*Attorneys for Lennar Corp., U.S. Home Corp.,
and North American Title Company*

21

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 4th day of January, 2013, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Adam M. Foslid
ADAM M . FOSLID

## SERVICE LIST

Patrick E. Geraghty, Esq.
GERAGHTY, DOUGHERTY
   & EDWARDS, P.A.
Post Office Box 1605
1531 Hendry Street
Ft Myers, FL 33902-1605
E-mail: pat@7-litagators.com

*Counsel for Plaintiffs Federal Deposit
Insurance Corporation and Taylor, Bean &
Whitaker Mortgage Corp.*

**[VIA CM/ECF]**

Michael H. Delbick, Esq.
Orlando Villalba, Esq.
MORTGAGE RECOVERY LAW GROUP
700 N. Brand Blvd. Suite 830
Glendale, CA 91203

*Counsel for Plaintiff, Taylor, Bean & Whitaker
Mortgage Corp.*

**[VIA U.S. MAIL]**

Edward J. Peterson, III, Esq.
STICHTER, RIEDEL, BLAIN
   & PROSSER, P.A.
110 East Madison Street, Suite 200
Tampa, FL 33602
E-mail: epeterson@srbp.com
        mclift@srbp.com

*Counsel for Plaintiff Taylor, Bean & Whitaker
Mortgage Corp.*

**[VIA CM/ECF]**

Sharon Kegerreis, Esq.
James D. Gassenheimer, Esq.
BERGER SINGERMAN LLP
1450 Brickell Avenue, Suite 1900
Miami, Florida 33131
E-mail: skegerreis@bergersingerman.com
       jgassenheimer@bergersingerman.com

*Counsel for Neil Luria as Plan Trustee of the
Taylor Bean & Whitaker Plan Trust*

**[VIA CM/ECF]**

Richard H. Critchlow, Esq.
Elizabeth B. Honkonen, Esq.
KENNY NACHWALTER, P.A.
201 South Biscayne Blvd
1100 Miami Center
Miami, Florida 33131-4327
E-mail: rcritchlow@knpa.com
      ehonkonen@knpa.com

*Counsel for Non-Party Berger Singerman LLP*

**VIA CM/ECF]**

David A. Wallace, Esq.
WILLIAMS PARKER HARRISON DIETZ
   & GETZEN
200 South Orange Avenue
Sarasota, FL 34230
E-mail: dwallace@williamsparker.com
      dfernandez@williamsparker.com

*Counsel for Andrews James Sorensen*

**[VIA CM/ECF]**

Theodore L. Tripp, Esq.
Kevin Patrick Fularczyk, Esq.
Justin B. Mazzara, Esq.
HAHN LOESER & PARKS, LLP
2532 East First Street
Fort Myers, FL  33901
E-mail:ttripp@hahnlaw.com
          jnavarrete@hahnlaw.com
          roliver@hahnlaw.com
          kfularczyk@hahnlaw.com
          jmazzara@hahnlaw.com,
          mjennings@hahnlaw.com

*Counsel for Matthew Devereaux*

**[VIA CM/ECF]**

Ms. Peggy Ferguson
1312 Addiewell PL
San Jose, CA 95120-3904
E-mail:peggy.renee@yahoo.com

**[VIA E-MAIL]**

Ms. Jenifer White
2325 Cedar Dr.
Eagle Mountain, UT 84005-4188
E-mail:white_jenifer@yahoo.com

**[VIA E-MAIL]**

Paul Andrew Gulbronson
12885 Schalk Ct.
Woodbridge, VA 22192-6467

**[VIA U.S. MAIL]**

Kelly Hatch, individually and
Manager for Aspen Home Loans, LLC
440 Brandt Court, Apt. 10
Salt Lake City, UT 84107-2301

**[VIA U.S. MAIL]**

Anthony P. Strasius, Esq.
Rachel F. Kelman, Esq.
WILSON ELSER, MOSKOWITZ,
EDELMAN & DICKLER, LLP
100 SE Second Street - Suite 3800
Miami, FL  33131
E-mail: anthony.strasius@wilsonelser.com
          rachel.kelman@wilsonelser.com
          greisy.ledo@wilsonelser.com

*Counsel for Anthony Gizzi Real Estate
Appraisal, Inc. & David Sawyer*

**[VIA CM/ECF]**

Ms. Ayla Burnett
Mr. Charles M. Burnett
Riverwalk Property Ventures, LLC
8189 Fort Hill Road
Eagle Mountain, UT  84005
E-mail:peace.courage@gmail.com

**[VIA E-MAIL]**

Ms. Julie A. White
2665 E Parleys Way, Apt. 116
Salt Lake City, UT 84109-1626
E-mail:julswhite23@gmail.com

**[VIA E-MAIL]**

Michael Riley Moore, Sr.
5122 S 1950 W
Roy, UT  84067-2504

**[VIA U.S. MAIL]**

Utah Exchange Group
Riverwalk Property Ventures, LLC
8189 Fort Hill Road
Eagle Mountain, UT 84005

**[VIA U.S. MAIL]**