UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver of Colonial
Bank, in its own capacity and an
assignee of certain claims of Taylor,
Bean & Whitaker Mortgage Corp.

      Plaintiff,

v.                                      Case No:   2:12-cv-595-FtM-38UAM

LENNAR CORPORATION, U.S.
HOME CORPORATION, NORTH
AMERICAN TITLE COMPANY,
AYLA D. BURNETT, CHARLES M.
BURNETT, PEGGY FERGUSON,
JENNIFER WHITE, JULIE WHITE,
UTAH EXCHANGE GROUP, ASPEN
HOME LOANS, LLC, KELLY
HATCH, PAUL ANDREW
GULBRONSON, MICHAEL RILEY
MOORE, SR. , RIVERWALK
PROPERTY VENTURES, LLC,
MATTHEW DEVEREAUX, ANDREW
JAMES SORENSEN, ANTHONY
GIZZI REAL ESTATE APPRAISAL,
INC. and DAVID SAWYER,

      Defendants.

_____/


**ORDER**[1]

_____

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

This matter comes before the Court on the Defendants Lennar Corporation, U.S. Home Corporation, and North American Title Company's Motion to Dismiss First Amended Complaint (Doc. #60) filed on December 10, 2012.  The Plaintiff, Taylor Bean & Whittaker Mortgage, Corp. filed its Response in Opposition (Doc. #85) on January 14, 2013.  The case was assigned to the undersigned district judge on May 30, 2013.  The Motion is, thus, ripe for review.

## **FACTS**

On August 15, 2008, Taylor Bean filed its first Complaint in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida (State Court). On August 14, 2012, Taylor Bean moved to amend the initial complaint to add the FDIC as a party, in its capacity as receiver for Colonial Bank ("Colonial").  Colonial Bank was Taylor Bean's lender for the mortgages at issue in this case.  Following the State Court's Order Granting Plaintiff's Motion to Amend dated October 10, 2012, Taylor Bean and the FDIC filed their First Amended Complaint (the "Amended Complaint" (Doc. # 22)) on October 30, 2012. The First Amended Complaint added the FDIC as a plaintiff, alleging that the FDIC was proceeding "in its own capacity" as Taylor Bean's bank and as "assignee of certain claims of" Taylor Bean; however, the FDIC asserted the same claims alleged by Taylor Bean in the first complaint. The case was removed to this Court by the FDIC on October 31, 2012.

The Amended Complaint alleges that Ayla D Burnett, Charles M Burnett, and the Utah Exchange Group (UEG) operated a mortgage-fraud scheme whereby the Burnetts and UEG recruited passive investors to use their identities and credit profiles to apply for mortgages and purchase residential properties in a Lennar Corp./U.S. Homes

development known as the Terraces at Riverwalk (Riverwalk). Taylor Bean alleges that the Burnetts through UEG targeted builders and developers who were liquidating multiple family unit developments, like Riverwalk, and who would be willing to pay large fees in connection with selling a large number of units.  Lennar Corp. and U.S Homes paid UEG fees up to 28% of the purchase price from the sales of its Riverwalk units.

With respect to the Lennar Defendants, the Amended Complaint alleges that, Lennar and U.S. Home, "acting through Defendant Sorensen and Defendant Devereaux" entered into an alleged agreement with certain of these individual Defendants to sell the Riverwalk units. (Doc. #22 ¶¶ 46-49).  These Defendants allegedly agreed that North American would act as closing agent for these transactions, which would be funded by first and second mortgages issued by Taylor Bean. (Doc. #22 ¶ 49, 141).

Taylor Bean alleges that the Burnetts along with the Defendants Gulbronson, and Moore and UEG formed Riverwalk Properties Ventures, LLC (RPV) to receive money from Lennar Corp. and U.S. Home in connection with the passive investor purchase transactions and to conceal the source of those funds.[2]  The Amended Complaint alleges the Burnetts and UEG used RPV to enter into an agreement with the Defendants Sorenson and Devereaux to sell a large portion of the remaining Riverwalk condominium units in bulk to passive investors.  None of the principals in UEG the Burnetts, Gulbronson, or Moore, were license realtors in Florida. The Amended Complaint alleges that the Utah Defendants used RPV and the Passive Investor Program along with the inflated credit of straw purchasers, and inflated valuations of the Riverwalk units to induce Taylor Bean

---

[2] The Defendants Gulbronson, and Moore are Defendants in this action but are not a part of the instant Motion to Dismiss.

into funding sham mortgage loans to finance their fraud scheme and pay themselves. (Doc. # 22, ¶¶18, 19, 34, 46, 49, 50, and 51).

Taylor Bean asserts that Patrick Devereaux, on behalf of Lennar and U.S. Home, not only agreed to participate, but served as an active and direct participant in the mortgage fraud scheme, manufacturing and providing Taylor Bean with fraudulent information, and intentionally withholding material information from Taylor Bean so that Taylor Bean would fund the loans at issue. Devereaux was employed as the Lennar/U.S. Home Director of Sales Operations for the Riverwalk condominiums at issue in this case. (Doc. #22, ¶ 18). Specifically, the Amended Complaint alleges that Lennar, through Devereaux and Sorenson, provided Taylor Bean with written certifications indicating that the significant majority of all the Riverwalk units were owner occupied rather than rented. (Doc. #22, ¶109). Taylor Bean alleges that Lennar and U.S. Home, through Devereaux, took additional steps to make certain that the false valuations – which were crucial to obtaining the "stated income/stated asset" loans– were consistent with the inflated asking prices for the units. (Doc. #22, ¶ 78). Taylor Bean states that it relied upon the false certifications which supported the higher and allegedly fraudulent valuations. (Doc. #22, ¶ 110).

## STANDARD OF REVIEW

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiffs. Christopher v Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). However, dismissal for failure to state a claim upon which relief may be granted does not require appearance, beyond a doubt. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561- 563, S.

Ct. 127 S. Ct. 1955, 167 L. Ed 2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement" to relief requires more than labels, conclusions, and a formulaic recitation of the cause of actions elements. Bell Atlantic, 550 U.S. 544, 561- 563.

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. Id. at 555; Swierkiewicz v. Sorema N.A., 534 U.S.  506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002).  Although the pleading standard announced in Fed R. Civ. P. 8 does not require "detailed factual allegations," it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Sinaltrainal v. Coca-Cola Co., 578 F. 3d 1252,  1268 (11th Cir. 2009) (citing Ascroft v. Iqbal, ----- U.S.----, 129 S. Ct. 1937, 1949, 173 L. Ed 2d 868  (2009).  Furthermore, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations. Sinaltrainal, 578 F. 3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)).  The facts as pled must state a claim for relief that is plausible on its face. Sinaltrainal, 578 F. 3d at 1268 (citing Iqbal, 129 S. Ct. at 1950). Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Simplexgrinnell, L.P. v. Ghiran, 2007 WL 2480352 (M.D. Fla. August 29, 2007) (citing Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Brown v. Crawford County, Georgia, 960 F.2d 1002, 1009-1010 (11th Cir. 1992).

**DISCUSSION**

The Lennar Defendants argue that the Amended Complaint should be dismissed because it fails: (1) to comply with the Federal Rules of Civil Procedure; (2) Taylor Bean failed to allege the essential elements of Florida state law claims for fraud in the inducement or negligent misrepresentation because they failed to state Taylor Bean justifiably relied on the misrepresentations; (3) the Amended Complaint fails to plead the requisite elements under Florida law for these claims; (4) the Amended Complaint fails to state a claim under Fed. R. Civ. P. 12(b)(6); and (5) the FDIC cannot state a claim against the Lennar Defendants.

*(1) Whether the Complaint Complies with the Federal Rules*

The Lennar Defendants argue the Motion to Dismiss should be granted because the Complaint fails to comply with the specificity requirement found in Fed. R. Civ P 9(b), and the Complaint fails to comply with Fed. R. Civ. P. 10.

*(a) Fed. Civ. P. 9(b)*

Rule 9(b) of the Federal Rules requires that claims of fraud be plead "with particularity." Fed. R. Civ. P. 9(b).  Rule 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This "particularity requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." Daniels v. National City Mortg., 2009 WL 2590078, *1 (M.D. Fla. August 20, 2009) (quoting W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 2008 WL 2845215 (11th Cir. July 24, 2008) (internal quotations omitted). Alternatively, dismissal is warranted if, assuming

the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009–10 (11th Cir.1992).

The Lennar Defendants state that nowhere in the Complaint does the Plaintiff make any allegations that Lennar lied to Taylor Bean or made any specific misrepresentation to Taylor Bean.  In addition, the Lennar Defendants argue the Amended Complaint only generally alleges that Sorenson and Devereaux supplied Taylor Bean with false written certifications indicating that the significant majority of the units in the Riverwalk were owner occupied.  As such, the Lennar Defendants state the lack of specificity violates the requirements of Fed. R. Civ. P. 9(b).

Taylor Bean responds that due to the complexity of the case the sufficiency of the fraud allegations necessarily varies with the complexity of the transaction and less specificity is required where numerous transactions are involved and occurred over a period of time as in this case.

Taylor Bean does in fact specifically establish a factual basis that the Lennar Defendants knew it would be hard to sell the Riverwalk units in Fort Myers because of the collapse of the real estate market in Fort Myers during the time frames involved in this case.  (Doc. #22, ¶¶ 37-45).  Further the Plaintiffs specifically allege that Sorenson and Devereaux were acting on behalf of Lennar and U.S. Home when they entered into an agreement to sell the Riverwalk properties using the alleged mortgage fraud scheme. (Doc. #22, ¶¶ 46, 18, 19).  The Lennar Defendants benefited from alleged fraud by selling the sixty-six (66) Riverwalk units at inflated prices.  Thus, the Plaintiffs did specifically

state sufficient facts in the Amended Complaint to meet the specificity requirements of Rule 9.

### *(b) Fed R Civ. P. 8 and 10*

The Defendant argues the Amended Complaint violates Fed. R. Civ. P. 8 because it is a shotgun pleading.  The Eleventh Circuit has held that a complaint which "lumps multiple claims together in one count and, moreover, appears to support a specific, discrete claim with allegations that are immaterial to that claim" is a shot gun pleading. Ledford v. Peeples, 657 F.3d 1222, 1239 (11th Cir. 2011).   Rule 8 requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).   Rule 10, provides: "If doing so would promote clarity, each claim founded on a separate transaction or occurrence ... must be stated in a separate count...."   Fed. R. Civ. P. 10(b). Rules 8 and 10 work together "to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading, the court can determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted, and, at trial, the court can determine that evidence which is relevant and that which is not." Fikes v. City of Daphne, 79 F.3d 1079, 1082 (11th Cir.1996) (citation omitted).  Further courts have held that a party may include in a single count all theories of recovery so long as those theories are all premised on the same facts. Woodburn v Florida Dep't. of Children & Families Servs., 859 F. Supp. 2d 1305, 1310 (S.D. Fla. 2012).

Here the Plaintiff's claims are succinctly laid out in numbered paragraphs with each claim separately detailed to the particular Defendant and all of the alleged fraudulent loan applications involving the Riverwalk units arose from the same set of facts and

circumstances.  While some claims apply to more than one Defendant, the Amended Complaint does not lump multiple claims together in one count involving different and unrelated issues.  Thus, upon review of the Amended Complaint, the Court finds that the factual basis for the allegations is sufficiently clear to put the Lennar Defendants on notice and to allow them to frame a defense and thus the Complaint is not a shotgun pleading.

### (2) Whether Taylor Bean Lacks Standing Because it Assigned All Claims to the FDIC

The Lennar Defendants claim that Taylor Bean no longer has standing because its claims were assigned to the FDIC.  Taylor Bean responds that of the 132 loans at issue in this case, ninety-four (94) were assigned to the FDIC with the remaining loans belonging to Taylor Bean.  Thus, Taylor Bean still has claims in this case and therefore has standing.

### (3) Whether Taylor Bean Plead the Requisite Elements Under Florida Law

The Lennar Defendants move to dismiss Counts I (Fraud in the Inducement) and Count IV (Negligent Misrepresentation) because Taylor Bean failed to allege that it relied on misrepresentations made by the Lennar Defendants.  Taylor Bean responds that it relied on the information provided by Lennar's agents regarding the sales and information pertaining to the Riverwalk development.

To state a claim for fraud in the inducement, a plaintiff must show that: "(1) a false statement was made regarding a material fact; (2) the individual who made the statement knew or should have known that it was false; (3) the maker intended that the other party rely on the statement; and (4) the other party relied on the false statement to its detriment." Paine v. Domino's Pizza, LLC, 2011 WL 1102788, *3 (S.D. Fla. March 4, 2011) (quoting

Taylor Woodrow Homes Florida, Inc. v. 4/46–A Corp., 850 So.2d 536, 542 (Fla. 5th DCA 2003)).   The elements of negligent misrepresentation are: "(1) a misrepresentation of material fact; (2) that the representor either knew or should have known was false when made without knowledge of truth or falsity; (3) the representor intended to induce another to act on the misrepresentation; and (4) resulting injury to a party acting in justifiable reliance on the misrepresentation." Allocco v. City of Coral Gables, 221 F.Supp.2d 1317, 1355 (S.D.Fla. 2002), *aff'd* 88 F. App'x 380 (11th Cir.2003).

The Lennar Defendants argue that Taylor Bean failed to establish the justifiable reliance standard because the Amended Complaint states the Defendants knew or should have known that Taylor Bean would rely on the false information.  Taylor Bean argues that reliance is not the same as failure to do due diligence because a lender must be able to rely on the information provided to it by the seller without having to conduct an extensive investigation into the information provided by the seller.

Taylor Bean alleges that Lennar and U.S. Home, through Devereaux, took additional steps to make certain that the false valuations – which were crucial to obtaining the "stated income/stated asset" loans– were consistent with the inflated asking prices for the Riverwalk units. (Doc. #22, ¶ 78). Taylor Bean relied upon the false certifications which supported the higher and fraudulent valuations. (Doc. #22, ¶ 110).  Taylor Bean's alleged reliance on the false valuations provided by Devereaux on behalf of the Lennar Defendants is sufficient at this stage of the case to establish that Taylor Bean relied on misrepresentations provided by the Lennar Defendants in making its loan decisions and therefore, the claims for fraud in the inducement survive the Motion to Dismiss.

Furthermore, the elements of negligent misrepresentation require that the defendant knew or should have known that the misrepresentations were false.  The Plaintiffs state that Lennar knew or should have known that the information they were providing to Taylor Bean was false.  Therefore, the allegations in the Amended Complaint are sufficient to survive the Motion to Dismiss Counts I and IV.

### (4)  *Whether the Amended Complaint Fails to State a Claim Under Fed. R. Civ. P 12(b)(6)*

The Lennar Defendants argue that Taylor Bean's claims are barred by the doctrine of *in pari delicto,* and Florida's *e*conomic loss rule.

### *In Pari Delicto*

The doctrine of *in pari delicto* is an affirmative defense and not appropriately considered upon a motion to dismiss.  Wiand v. EFG Bank, 2012 WL 750447 *6 (M.D. Fla. February 8, 2012) (citing to Steinberg ex rel. Lancer Management Group v. LLC. v. Alpha Fifth Group, 2010 WL 1332844, *4 (S.D. Fla. March 30, 2010)).   Thus, the Motion to Dismiss is due to be denied upon those grounds.

### *Economic Loss Rule*

The Lennar Defendants also argue that the Plaintiffs' claims against North American Title, one of the Lennar Defendants, are barred by the economic loss rule.   The Lennar Defendants state that since the claims against Lennar Defendant North American arise out of the contract between North American and Taylor Bean, the claims must be dismissed pursuant to the economic loss rule.   "[T]he economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses."  Tiara Condominium Ass'n, Inc. v.

Marsh & McLennan Companies, Inc., 110 So.3d 399, 401 (Fla.2013). The Florida economic loss rule provides that parties to a contract cannot recover in tort for alleged damages arising out of a contract. Royal Surplus Lines Ins. Co. v. Coachman Indus., Inc., 184 Fed. Appx. 894, 902 (11th Cir. 2006) (per curiam). The rule generally applies "where the parties are in contractual privity and one seeks to recover damages in tort for matters arising from the contract." Id. (quoting Indem. Ins. Co. of N. Am. v. Am. Aviation, 891 So. 2d 532, 536 (Fla. 2004)); *see also* id. ("The rule is based upon the doctrine that contractual principles are more appropriate than tort principles for resolving economic loss claims.").

The Florida Supreme Court has defined economic losses as follows:

> We have defined economic loss as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property." We further explained that economic loss "includes 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' In other words, economic losses are 'disappointed economic expectations,' which are protected by contract law, rather than tort law."

Id. (internal citations omitted).  However, over the years the Florida Supreme Court has carved out exceptions to the economic loss rule.  Those exceptions apply to cases involving negligent misrepresentation and fraud in the inducement. Burns, 2013 WL 4437246 at *3.  Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract. HTP. Ltd. v. Lineas Aeras Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1996).  Fraudulent inducement is an independent tort in that it requires proof of facts separate and distinct from the breach of contract.  So the exceptions to the economic loss rule still apply in cases that allege fraudulent inducement and negligent misrepresentation claims as long

as those claims are independent of the products liability context. Burns, 2013 WL 4437246 at *3 (citing Tiara Condominium Ass'n., 110 So.3d at 406).

In Tiara, the Florida Supreme Court drastically curtailed the application of the economic loss rule so that it undoubtedly has no relevance to the claims arising out of the alleged false valuations report at issue in this case. F.D.I.C. ex rel. Colonial Bank v. Pearl, 2013 WL 1405941, *5 (M.D. Fla., April 8, 2013) (citing Tiara Condo. Ass'n, 2013 WL 828003, at *7). Additionally, the Court notes that the economic loss rule historically has never barred traditional tort claims such as professional negligence or fraud. Pearl, 2013 WL 1405941 at *5. As such, even prior to the recent Florida Supreme Court opinion in Tiara, the economic loss rule would most likely have not have barred Taylor Bean's claims against the Lennar Defendant North American.

Thus, the claims assigned to the FDIC are not subject to the economic loss rule and the Lennar Defendants' Motion to Dismiss the Complaint against them on the basis of the economic loss rule is denied as to both Taylor Bean and the FDIC.

### (5) Whether the FDIC Can State a Direct Claim Against the Lennar Defendants

The Lennar Defendants argue that the FDIC cannot assert a claim for fraud or negligent misrepresentation because it did not plead any facts supporting that it relied on the valuations or that alleged false valuations caused Colonial or the FDIC any harm. The Lennar Defendants argue that no one from Colonial met with or communicated with or received any misrepresentations from any of the Lennar Defendants.

The Lennar Defendants' argument lacks merit. While it may be true that no one from Colonial Bank or FDIC had direct communications with the Lennar Defendants, Florida courts have recognized that a person who in the course of his business or in any

transaction in which he has a pecuniary interest supplies false information for the guidance of others in their business transactions is subject to liability for the pecuniary loss caused to the others by their justifiable reliance on the information.  Blumstein v. Sports immortals, Inc., 67 So. 3d 437 441 (Fla. 4th DCA 2011).

In this instance, Taylor Bean and the FDIC alleged that they relied on the false information provided by the Lennar Defendants to provide mortgages on the Riverwalk units.  While the FDIC may not have had direct contact with any of the Lennar Defendants, it stands as the successor in interest to Colonial Bank.  Taylor Bean used Colonial Bank to provide funds for the mortgages it issued on the Riverwalk units.

Taylor Bean further alleges the Lennar Defendants knew that Taylor Bean relied on third party financial institutions such as Colonial Bank (FDIC) to fund its mortgages and further that those third party lenders would rely on the false appraisals provided by the Lennar Defendants to fund Taylor Bean's mortgages. (Doc. #22, ¶¶ 51, 53, 61, 73, 94, 107, 115, 122, 132, 164, 165, 178, 179, 180, 187, 199, 200, and 201).  Taylor Bean further alleges that Colonial Bank (FDIC) relied on the false valuations and reports provided by the Lennar Defendants in providing Taylor Bean with the necessary financing to fund the mortgages. (Doc. #22, ¶¶ 51-53). The Amended Complaint alleges that the Lennar Defendants profited from the sale of the Riverwalk condos at Colonial Bank's (FDIC) and Taylor Bean's expense.  Thus, Taylor Bean and the FDIC sufficiently allege that they relied on the allegedly false information supplied by the Lennar Defendants for the guidance in making the loans on the Riverwalk units - Loans that eventually failed because they were allegedly based upon false information causing a loss to Taylor Bean.

The Lennar Defendants also argue that Colonial Bank's (FDIC) claim against North American should be dismissed because there is no allegation that North American had a contract with or owed a duty of loyalty to Colonial Bank (FDIC).  As noted above, Florida courts have recognized that a person who in the course of his business or in any transaction in which he has a pecuniary interest supplies false information for the guidance of others in their business transactions is subject to liability for the pecuniary loss caused to the others by their justifiable reliance on the information.  Blumstein v. Sports immortals, Inc., 67 So. 3d 437 441 (Fla. 4th DCA 2011).

Here Taylor Bean and FDIC allege that Colonial Bank relied on the statements made by the Lennar Defendants to finance the purchases of the Riverwalk units.  The FDIC stands in the shoes of Colonial Bank and was assigned ninety-four (94) of the defaulted loan claims by Taylor Bean.  Those ninety-four (94) assigned loans were foreclosed on costing the FDIC to suffer a loss protecting the assets of the defunct Colonial Bank.  Thus, the FDIC can in fact allege direct claims under the Restatement of Torts Second § 552.  As such, the motion to dismiss is due to be denied.

## CONCLUSION

Taylor Bean and the FDIC have alleged sufficient facts to comply with the Federal Rules, establish standing for Taylor Bean and the FDIC, and to support the elements of claim for fraud and/or negligent inducement.  In addition, the Amended Complaint is not barred by the economic loss rule.  Thus, the Motion to Dismiss is due to be denied.

**ORDERED:**

The Defendants Lennar Corporation, U.S. Home Corporation, and North American

Title Company's Motion to Dismiss First Amended Complaint (Doc. #60) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 17th day of January, 2014.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record