UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FEDERAL DEPOSIT INSURANCE
CORPORATION, as receiver of Colonial
Bank, in its own capacity and an
assignee of certain claims of Taylor,
Bean & Whitaker Mortgage Corp.

      Plaintiff,

v.

Case No: 2:12-cv-595-FtM-38UAM

LENNAR CORPORATION, U.S.
HOME CORPORATION, NORTH
AMERICAN TITLE COMPANY,
AYLA D. BURNETT, CHARLES M.
BURNETT, PEGGY FERGUSON,
JENNIFER WHITE, JULIE WHITE,
UTAH EXCHANGE GROUP, ASPEN
HOME LOANS, LLC, KELLY
HATCH, PAUL ANDREW
GULBRONSON, MICHAEL RILEY
MOORE, SR. , RIVERWALK
PROPERTY VENTURES, LLC,
MATTHEW DEVEREAUX, ANDREW
JAMES SORENSEN, ANTHONY
GIZZI REAL ESTATE APPRAISAL,
INC. and DAVID SAWYER,

      Defendants.
_____/

**ORDER[1]**

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

This matter comes before the Court on the Defendants, Ayla D Burnett, Charles M Burnett, Peggy Ferguson, Jenifer White, Julie White, Utah Exchange Group, and Riverwalk Property Ventures' (Utah Defendants) Motion to Dismiss (Doc. #111) filed on April 15, 2013.  The Plaintiff, Taylor Bean & Whittaker Mortgage, Corp. filed its Response in Opposition (Doc. # 119) on May 17, 2013.  The case was assigned to the undersigned district judge on May 30, 2013.  The Motion is ripe for review.

## FACTS

On August 15, 2008, Taylor Bean filed its first Complaint in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida (State Court). On August 14, 2012, Taylor Bean moved to the amend the first complaint to add the FDIC, in its capacity as receiver for Colonial Bank ("Colonial"), which was Taylor Bean's lender.  Following the State Court's Order Granting Plaintiff's Motion to Amend dated October 10, 2012, Taylor Bean and the FDIC filed their First Amended Complaint (the "Complaint") on October 30, 2012. The First Amended Complaint added FDIC as a plaintiff, alleging that FDIC was proceeding "in its own capacity" as Taylor Bean's bank and as "assignee of certain claims of" Taylor Bean; however, the FDIC asserted the same claims alleged by Taylor Bean in the first complaint.  The FDIC removed the case to this Court on October 31, 2012.

The Amended Complaint alleges that, Ayla D Burnett, Charles M Burnett, and the Utah Exchange Group (UEG) operated a mortgage-fraud scheme whereby the Burnetts and UEG recruited passive investors to use their identities and credit profiles to apply for mortgages and purchase residential properties in a Lennar Corp./U.S. Homes development known as the Terraces at Riverwalk (Riverwalk). Taylor Bean alleges that the Burnetts through UEG targeted builders and developers who were liquidating multiple

family unit developments, like Riverwalk, and who would be willing to pay large fees in connection with selling a large number of units. The fees from the sales (up to 28% of the purchase price of the units) were then used to pay off the passive investors and make monthly mortgage payments on the fraudulently purchased units for several months before, the straw man buyers defaulted on the property.

The Complaint alleges the Burnetts and UEG used RPV to enter into an agreement with the Defendants Sorenson and Devereaux to sell a large portion of the remaining Riverwalk condominium units in bulk to passive investors. Taylor Bean alleges that the Burnetts along with the Defendants Gulbronson, and Moore and UEG formed Riverwalk Properties Ventures, LLC (RPV) to receive money from Lennar Corp. and U.S. Homes in connection with the passive investor purchase transactions and to conceal the source of those funds. None of the principals in UEG the Burnetts, Gulbronson, or Moore, were license realtors in Florida. The Amended Complaint alleges that the Utah Defendants used RPV and the Passive Investor Program along with the inflated credit of straw purchasers, and inflated valuations of the Riverwalk units to induce Taylor Bean into funding sham mortgage loans to finance their fraud scheme and pay themselves. (Doc. # 22, ¶¶18, 19, 34, 46, 49, 50, and 51). Taylor Bean continues that each of the Defendants here, the Burnetts and UEG knew or should have known that a mortgage lender would not make the loans in question if the actual terms and circumstances of the sales were fully disclosed.

The Amended Complaint further alleges that Peggy Ferguson, Jenifer White, and Julie White were willing participants in the passive investor scheme. Taylor Bean alleges that Peggy Ferguson, Jenifer White, and Julie White knowingly submitted false loan

applications for first and second mortgage loans (totaling over seventeen (17) million dollars) in late 2006 involving sixty-six (66) units at the Riverwalk development.  The Complaint alleges the Passive investors were paid a fee between $2000 and $2500 for each false application they submitted.  Taylor Bean alleges that the passive investors invested no money in any aspect of the subject transactions but instead authorized the use of their identity and credit worthiness to be used in the purchases at Riverwalk.

Taylor Bean brought three (3) claims against the Utah Defendants in the Amended Complaint: Count I for fraud in the inducement against Ayla Burnett, Jenifer White, Julie White, Peggy Ferguson, and UEG; Count III for conspiracy against Ayla Burnett, Charles Burnett, Jenifer White, Julie White, Peggy Ferguson, UEG, and RPV; and Count IV for negligent misrepresentation against Ayla Burnett, Jenifer White, Julie White, Peggy Ferguson, and UEG. (Doc. # 22, ¶¶ 156–169, 185–191, 191–205).  The remaining five causes of action contain allegations against other Defendants.

## STANDARD OF REVIEW

In deciding a motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiffs. Christopher v Harbury, 536 U.S. 403, 406, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002).  However, dismissal for failure to state a claim upon which relief may be granted does not require appearance, beyond a doubt. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561- 563, S. Ct. 127 S. Ct. 1955, 167 L. Ed 2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement" to relief requires more than labels, conclusions,

and a formulaic recitation of the cause of actions elements. Bell Atlantic, 550 U.S. 544, 561- 563.

To satisfy the pleading requirements of Fed. R. Civ. P. 8, a complaint must simply give the defendants fair notice of what the plaintiff's claim is and the grounds upon which it rests. Id. at 555; Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002). Although the pleading standard announced in Fed R. Civ. P. 8 does not require "detailed factual allegations," it does demand more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." Sinaltrainal v. Coca-Cola Co., 578 F. 3d 1252, 1268 (11th Cir. 2009) (citing Ascroft v. Iqbal, ----- U.S.----, 129 S. Ct. 1937, 1949, 173 L. Ed 2d 868 (2009). Furthermore, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations. Sinaltrainal, 578 F. 3d at 1268 (citing Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005)). The facts as pled must state a claim for relief that is plausible on its face. Sinaltrainal, 578 F. 3d at 1268 (citing Iqbal, 129 S. Ct. at 1950). Dismissal is warranted under Fed. R. Civ. P. 12(b)(6) if, assuming the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Simplexgrinnell, L.P. v. Ghiran, 2007 WL 2480352 (M.D. Fla. August 29, 2007) (citing Neitzke v. Williams, 490 U.S. 319, 326, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989); Brown v. Crawford County, Georgia, 960 F.2d 1002, 1009-1010 (11th Cir. 1992).

## **DISCUSSION**

The Utah Defendants argue that the Amended Complaint should be dismissed because: (1) Plaintiff's Amended Complaint does not satisfy the threshold requirements of the Federal Rules of Civil Procedure; (2) the Amended Complaint does not allege the

necessary elements required to maintain its cause of action under Florida law; (3) the Amended Complaint fails to state a claim upon which relief can be granted; and (4) the Plaintiff FDIC cannot maintain a direct claim against any of the Defendants. The Court will address each argument in order.

### (1) Whether the Amended Complaint Satisfies the Requirements of the Federal Rules

The Utah Defendants claim that the Amended Complaint fails to satisfy the requirements of Fed. R. Civ. P. 9(b) because: (a) the Amended Complaint does not state with the particularity the misrepresentations made by each Defendant individually, (b) the Amended Complaint does not contain sufficient facts to establish that Jenifer White, Julie White, or Peggy Ferguson had knowledge of the alleged fraud; (c) the Amended Complaint lumps separate and distinct claims into a single cause of action; and (d) the Amended Complaint asserts that Taylor Bean assigned its claims so it is not a real party in interest.

### (a) Particularity Requirement Fed. R. Civ. P. 9(b)

Rule 9(b) of the Federal Rules requires that claims of fraud be plead "with particularity." Fed. R. Civ. P. 9(b). Rule 9(b) states "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This "particularity requirement serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior." Daniels v. National City Mortg., 2009 WL 2590078, 1 (M.D.Fla. August 20, 2009) (quoting W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc., 2008 WL 2845215 (11th Cir. July 24, 2008) (internal quotations omitted). Alternatively, dismissal is warranted if, assuming

the truth of the factual allegations of plaintiff's complaint, there is a dispositive legal issue which precludes relief. Neitzke v. Williams, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); Brown v. Crawford County, Ga., 960 F.2d 1002, 1009–10 (11th Cir.1992).

The Utah Defendants argue that Rule 9(b) does not allow Taylor Bean to lump all of the Defendants together but requires Plaintiff to differentiate each separate allegation and inform each Defendant separately of the allegations surrounding their alleged participation in the fraud. The Utah Defendants further argue that no single Defendant can answer the charges because they are unable to determine the factual basis for their alleged participation in the fraud since they are all lumped together.

Taylor Bean argues that the Amended Complaint contains numerous fact-based allegations directed at each of the Utah Defendants which demonstrate not only that they agreed to participate in the underlying fraudulent scheme, but also the concrete actions they took in furtherance of that scheme. Taylor Bean further argues that the Amended Complaint gives the who, what, where and why regarding each fraud allegation so that Utah defendants are on notice of the claims which are against them and the fraud claims are clear based upon the facts in the Amended Complaint.

The Eleventh Circuit has noted that because "fair notice is '[p]erhaps the most basic consideration' underlying Rule 9(b), the plaintiff who pleads fraud must 'reasonably notify the defendants of their purported role in the scheme.' " Degirmenci v. Sapphire-Fort Lauderdale, LLLP, 693 F.Supp.2d 1325, 1344 (S.D. Fla. 2010) (citing Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1381 (11th Cir.1997) (quoting Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1020 (7th Cir.1992)). Therefore, a Plaintiff

must plead fraud with sufficient details. However, Rule 9(b) must be read in conjunction with Rule 8(a) so as to not "abrogate the concept of the notice pleading." " *Degirmenci*, 693 F.Supp.2d at 1344 (citing *Durham v. Bus. Mgmt. Assocs.*, 847 F.2d 1505, 1511 (11th Cir.1988)).

The Eleventh Circuit stated in *Ziemba v. Cascade International, Inc.* that: "Rule 9(b) is satisfied if the Complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." 256 F.3d 1194, 1202 (11th Cir.2001).

While the instant Amended Complaint does group together Defendants and the mortgages on the sixty-six (66) units, it does so only after a detailed explanation of the fraudulent scheme and the various roles each of the Utah Defendants played in the alleged fraud. Taylor Bean details the role that each of the Utah Defendants played in the alleged fraud naming each defendant separately, describing the acts each took to participate in the fraud, and giving the time when the fraud was completed in November of 2006 when the alleged fraudulent loans were closed. For example Taylor Bean lays out that the Defendants Jenifer White, Julie White, and Peggy Ferguson, participated as passive investors and knowingly prepared false loan applications for one or more of the Riverwalk loans purchased in bulk by the straw purchasers, and signed false closing documents on behalf of one or more of the straw purchasers in November of 2006. Regarding the Burnett's role in the alleged fraud, the Amended Complaint sets forth in

detail how they inflated the appraisal value of the condo units involved, found passive investors to create false applications for mortgages, arranged for false self-employment documents to be prepared for the passive investors, and arranged for Lennar Corp. to provide one of its subsidiaries to act as closing agent on the Riverwalk condos so that no one at Taylor Bean or one of the lending institutions would look into the alleged sham loans too closely. (Doc. # 22, ¶¶46-47, 49, 54-55, 58, 63, 66, 68, 74-75, 101-105, 107, 112, 113, 117, 125(a), 127, and 136). The Passive Investors benefited financially because they were paid for each loan application they completed. Based upon the allegations in the Amended Complaint Taylor Bean has pled its fraud allegations with sufficient particularity to satisfy Fed. R. Civ. P. 9(b).

### *(b) Whether the Amended Complaint Alleges Sufficient Facts*

The Utah Defendants argue that the Amended Complaint fails to allege any facts that would give rise to an inference of fraudulent intent or knowledge—let alone a strong inference thereof—on behalf of Peggy Ferguson, Jenifer White, or Julie White. The Utah Defendants continue that Taylor Bean did not allege any facts in the Amended Complaint that would support a claim that Julie and Jenifer White, and Peggy Ferguson had knowledge of their allegedly fraudulent conduct.

Contrary to the Utah Defendants' argument, the Amended Complaint is replete with specific allegations demonstrating that the Utah Defendants had knowledge their actions were fraudulent. Taylor Bean points out in its Response that:

> The [Amended Complaint] puts each of the Utah Defendants on notice of the misconduct with which they are charged—that is, for example, each engaged in, and failed to disclose to [Taylor Bean], the "Passive Investor Program" for the 66 remaining Riverwalk properties; that Mrs. Burnett was responsible for arranging mortgage financing for each purchase; that the Burnetts, Gulbronson, Moore, and UEG recruited individual Passive

9

> Investors to act as "purchasers"; Mr. Burnett signed sales contracts as agent for seller and RPV; Mrs. Burnett, Jenifer White, Julie White and Peggy Ferguson submitted false home loan applications with fraudulent letters from tax preparers falsely certifying purchaser/borrowers self-employment and income; and that the Burnetts, Jenifer White, Moore, and others affiliated with UEG travelled from Utah to Ft. Myers in late November to effectuate the fraudulent closings by November 30, 2006.

(Doc. # 119, p. 9). Upon review of the Amended Complaint, it is clear that all of the allegations against the Utah Defendants are fully spelled out including that each Defendant acted with knowledge in performing the alleged fraud. The Amended Complaint states that the Burnetts agreed to cooperate with each other and other Defendants in providing false and incomplete information to the prospective mortgage lender. (Doc. # 22, ¶ 50). The Amended Complaint continues in Court I stating that "Ayla Burnett, Jenifer White, Julie White, Ferguson . . . knew that false and misleading information was being furnished to [Taylor Bean] and material facts and information was being intentionally being withheld from [Taylor Bean] in connection with the Riverwalk loans." (Doc. # 22, ¶ 159). These are just a couple of examples where the Amended Complaint expressly states the Utah Defendants had knowledge of the alleged fraud. Thus, the Amended Complaint contains sufficient allegations supporting the Plaintiff's proposition that the Utah Defendants knew their actions were fraudulent.

### (c) <u>Whether the Amended Complaint is Invalid Because it Combines All 132 Loans Together in One Claim in Violation of Rule 10(b)</u>

The Utah Defendants argue that the Amended Complaint does not comply with Fed. R. Civ. P. 10(b) because it lumps claims involving all sixty six (66) condo units and the 132 transactions together rather than listing each separately in numbered counts. Rule 10 requires that:

> [a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded upon on a separate transaction or occurrence– and each defense other than a denial– must be stated in and separate count or defense.

Fed. R. Civ. P. 10(b).

While Taylor Bean does allege that the Utah Defendants and others committed 132 separate fraudulent transactions involving sixty-six (66) units at Riverwalk in the Amended Complaint, detailing each transaction in a separate count is not necessary under Rule 10(b). A party may include in a single count all theories of recovery so long as those theories are all premised on the same facts. Woodburn v Florida Dep't. of Children & Families Servs., 859 F. Supp. 2d 1305, 1310 (S.D. Fla. 2012). Here, all of the alleged fraudulent loan applications involving the Riverwalk units arose from the same set of facts and circumstances. Each of the Utah Defendants' actions and alleged fraudulent behavior is detailed naming each defendant separately, describing the acts each took to participate in the fraud, and giving the time when the fraud was completed in November of 2006 when the alleged fraudulent loans were closed. Thus, because the Amended Complaint provides sufficient detail for the Utah Defendants to defend the allegations in clear numbered paragraphs, the Motion to Dismiss on the grounds that the Amended Complaint violates Rule 10(b) is denied. *See* Simon Property Group, Inc. v. Lauria, 2012 WL 1934405, *4 (M.D. Fla. May 29, 2012) (holding that a fraud case should not be dismissed because the parties were grouped together and their participation in the alleged fraudulent scheme was clearly explained).

(d) *Whether Taylor Bean is the Real Party in Interest*

The Utah Defendants claim that Taylor Bean is not the real party in interest because it assigned its claims to the FDIC. The Utah Defendants claim the Amended Complaint is ambiguous as to whether or not all of its claims were transferred to the FDIC or just some of them were assigned to the FDIC. Thus, the Utah Defendants state the Amended Complaint does not comply with Fed. R. Civ. P. 17(a).

A real party in interest is the party in whose name a federal civil action shall be prosecuted, Fed R. Civ. P. 17(a), and who by substantive law has the right sought to be enforced and who possesses a significant interest in the action to entitle him to be heard on the merits. Garcia v. American Sec. Ins. Co., 2012 WL 2589862, *2 (M.D. Fla. July 3, 2012) (citing Gonzalez ex. rel. Gonzalez v. Reno, 86 F.Supp.2d 1167, 1182 (S.D.Fla. 2000)). Rule 17(a) provides that a "court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Fed.R.Civ.P. 17(a).

The Amended Complaint states that Taylor Bean and the FDIC "have entered in a settlement agreement that transfers and assigns all claims and causes of action that Taylor Bean may have related to the Riverwalk loans remaining on Colonial's credit lines, which comprise [ninety-four (94)] of the 132 Riverwalk loans." (Doc. # 22, ¶ 154). Contrary to the Utah Defendant's argument, Taylor Bean did not assign all of the claims to the FDIC. The Amended Complaint contains at the least thirty-eight (38) mortgage claims that were not assigned to the FDIC by Taylor Bean. Thus, Taylor Bean is a real

party in interest in this case and the Motion to Dismiss is due to denied on the grounds that the Amended Complaint does not comply with the Federal Rules.

### (2) *Whether the Amended Complaint Maintains a Cause of Action Under Florida Law*

The Utah Defendants argue that Taylor Bean's claims for fraud in the inducement, misrepresentation, and conspiracy should be dismissed because the Amended Complaint fails to allege the necessary elements to maintain those causes of action under Florida law. The Utah Defendants argue that Count I and Count IV fail to allege that Plaintiffs justifiably relied on any alleged misrepresentations made by Defendants and Further that Count II fails to allege that Defendants had actual knowledge of or participated in the purported fraud.

Under Florida law, to state a claim for fraud in the inducement, a plaintiff must allege: (1) a false statement of material fact; (2) the maker of the false statement knew or should have known of the falsity of the statement; (3) the maker intended that the false statement induce another's reliance; and (4) the other party justifiably relied on the false statement to its detriment. Freeman v. Sharpe Resources Corp., 2013 WL 2151723, *10 (M.D. Fla. May 16, 2013) (citing Rose v. ADT Sec. Servs. Inc., 989 So.2d 1244, 1247 (Fla. 1st DCA 2008)).

The Amended Complaint alleges that the Burnetts, individually and on behalf of UEG, actively participated in the "Passive Investor" scheme. (Doc. # 22, ¶¶49, 84-91,109). The Amended Complaint alleges that the Burnetts, UEG, and others recruited individual "Passive Investors" to act as purchasers in the alleged sham Riverwalk sales. (Doc. # 22, ¶ 54). The Amended Complaint alleges that Jenifer White, Julie White, and Peggy Ferguson, along with the other Utah Defendants, also actively participated in the

13

scheme, by among other things, submitting false employment and income certifications to Taylor Bean as part of loan applications, closing loans and making mortgage loan payments, which certifications were false. (Doc. # 22 ¶¶ 36, 74, 101-106). These facts, among others pleaded in the Amended Complaint more than establish the Utah Defendants' knowledge of, and participation in, the misrepresentations concerning the "Passive Investor" fraud scheme.

Taylor Bean has sufficiently plead that the Utah Defendants made the alleged untruthful statements; the content of the statements; the manner in which they were made; and how Taylor Bean was misled. (Doc. 22 ¶¶ 36, 46, 74, 84-91, 101-106, 109 ). Taylor Bean alleged that all Defendants knew the statements were false when made; the Utah Defendants made the statements with the intent of inducing Taylor Bean to provide the funds for the mortgages; and that Taylor Bean relied upon the statements by providing the mortgages. (22. ¶¶ 36, 46, 74, 84-91, 101-106, 109 ).

### (3) *Whether the Amended Complaint Fails to State a Claim Upon Which Relief Can be Granted*

The Utah Defendants argue that Taylor Bean is barred from bringing this action due to the doctrine of *in pari delicto*, which states that if the plaintiff participates in the same wrong doing as the defendant, the defendant's position is stronger. O'Halloran v. PricewaterhouseCoopers LLP., 969 So. 2d 1039, 1044 (Fla. 2d DCA 2007). Here, the Utah Defendants claim that Taylor Bean participated in the alleged fraud through one of its employees Angela Cooley. Cooley was responsible for monitoring the mortgage transactions and she processed the purportedly fraudulent loan applications.

Taylor Bean responds that there is no allegation that Cooley participated in the alleged fraud in the Amended Complaint.  Taylor Bean continues that while Angela Cooley received bonus payments from certain defendants for extra work performed over a holiday weekend, the Amended Complaint never alleged she participated in any fraud and therefore there is no basis to apply the doctrine of *in pari delicto*.

"The equitable defense of *in pari delicto,* which literally means 'in equal fault,' is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." Pearlman v. Alexis, 2009 WL 3161830, *2 (S.D. Fla. September 25, 2009) (citing Pinter v. Dahl, 486 U.S. 622, 632, 108 S. Ct. 2063, 100 L.Ed.2d 658 (1988)); s*ee* Official Cmte. of Unsecured Creditors of PSA, Inc. v. Edwards, 437 F.3d 1145, 1152 (11th Cir.2006) ("The doctrine of *in pari delicto* is an equitable doctrine that states 'a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing.'")(quoting Black's Law Dictionary 794 (7th ed.1999)).

On a motion to dismiss, the court is generally limited to considering the allegations in the operative complaint, which are assumed to be true in ruling on the motion. Pearlman, 2009 WL 3161830 at *3 (citing Wilchombe v. Tee Vee Toons, Inc., 555 F.3d 949, 959 (11th Cir.2009)). Because *in pari delicto* is an affirmative defense requiring proof of facts asserted by the defendant, it is usually not an appropriate ground for a Rule 12(b)(6) dismissal. Pearlman, 2009 WL 3161830 at *3 (citing Knauer v. Jonathon Roberts Financial Group, Inc., 348 F.3d 230, 237 n. 6 (7th Cir.2003) (noting that *"in pari delicto* is an affirmative defense and generally dependent on the facts, and so often not an appropriate basis for dismissal"). An *in pari delicto* defense may be successfully asserted at the pleading stage only where "the facts establishing the defense are: (1) definitively

ascertainable from the complaint and other allowable sources of information, and (2) suffice [sic] to establish the affirmative defense with certitude." Pearlman, 2009 WL 3161830 at *3 (citing Gray v. Evercore Restructuring, LLC, 544 F.3d 320, 325 (1st Cir. 2008)).

As noted by Taylor Bean, Cooley is not named in the Amended Complaint nor can it be definitively ascertained from the Amended Complaint that Cooley or anyone else at Taylor Bean had knowledge that the Utah Defendant's loan applications were false. Thus, the doctrine of *in para delicto* is not applicable to the instant Motion to Dismiss.

### *(4) Whether the Plaintiff FDIC can Maintain a Direct Claim Against the Defendants*

The Utah Defendants argue that the FDIC does not have a direct claim against any of the Defendants because it has not alleged nor can it allege, the causation or reliance elements for the tort claims in Counts I II and IV.  The Utah Defendant's argue, in their brief, that the FDIC did not plead any factual allegations that its damages were caused by the purported fraudulent misrepresentations made by the Defendants because FDIC did not, in fact, suffer any damages as a result of those alleged misrepresentations. Furthermore, FDIC did not plead that it relied upon these purportedly fraudulent misrepresentations. Rather, FDIC makes a conclusory allegation that Defendants "knew or had reason to expect" that third-party financial institutions, such as Colonial, would "reasonably rely upon the information contained in the loan applications." (Doc. # 22, ¶ 73).

Taylor Bean responds that pursuant to the Restatement Torts Second §552 and § 531.  The Restatement of Torts Second states in pertinent part:

> [o]ne who embodies a fraudulent misrepresentation in an article of commerce, a muniment of title, a negotiable instrument or a similar commercial document, is

16

>subject to liability for pecuniary loss caused to another who deals with him or with a third person regarding the article or document in justifiable reliance upon the representation.

REST 2d Torts §532. The comments to the Restatement § 532 Second state that "these misrepresentation differ from independent misrepresentations of value or quality or article sold or other misrepresentations of the advantages of a bargain, in that those considered here are incorporated in a document of a character that makes it expected to be transmitted and to be relied on by third persons in commercial dealings with it, on the faith of the honesty of what it conveys" REST 2d Torts §532, comment c. The Courts in Florida have adopted the Second Restatement Torts and recognize that a person who in the course of his business or in any transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for the pecuniary loss caused to the others by their justifiable reliance on the information. Blumstein v. Sports Immortals, Inc., 67 So. 3d 437, 441 (Fla. 4th DCA 2011).

The Amended Complaint alleges that the Utah Defendants "knew or should have known that Taylor Bean used credit facilities from third-party financial institutions, including Colonial, to fund the alleged fraudulent loans at closing. (Doc. # 22, ¶ 73). The Amended Complaint further alleges that the Utah Defendants knew or had reason to expect and intended that third party financial institutions, including (FDIC took over Colonial) would reasonably rely upon the information contained in the loan applications. (Doc. # 22, ¶ 73). It is clear from the applications that Colonial (FDIC) would have to rely on the information provided by the Utah Defendants in the loan applications to actually make the loans on the Riverwalk properties. Thus, the Amended Complaint contains sufficient detail to support the alleged fraud claims that the Utah Defendants knowingly

17

falsified information on loan applications that would be relied upon by third parties, in this case Colonial (the FDIC), and as such the Motion to Dismiss is due to be denied.

### CONCLUSION

After a review of the Motion and Response in Opposition, the Court finds that the Amended Complaint satisfies the threshold requirements of the Federal Rules of Civil Procedure; alleges the necessary elements required to maintain its cause of action under Florida law; states a claim upon which relief can be granted; and the FDIC can maintain a direct claim against the Utah Defendants. Therefore, the Motion is due to be denied.

Accordingly, it is now

**ORDERED:**

Defendants, Ayla D Burnett, Charles M Burnett, Peggy Ferguson, Jenifer White, Julie White, Utah Exchange Group, and Riverwalk Property Ventures' Motion to Dismiss (Doc. #111) is **DENIED**.

**DONE** and **ORDERED** in Fort Myers, Florida this 17th day of January, 2014.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: All Parties of Record